SCHALLENKAMP, Appellant v. STEVENS et al., Respondents

(138 N.W.2d 657)

(File No. 10279. Opinion filed December 15, 1965)

Rehearing denied January 5, 1966

**Rex M. Sheild,** Salem, **Blaine Simons,** Sioux Falls, for plaintiff and appellant.

**Zimmer & Connelly** and **John H. Zimmer,** Parker, for defendants and respondents.

HANSON, J. F. Eugene Stainsby died June 23, 1964 leaving the following will:

"I, Eugene Stainsby, on March 24, 1964, do hereby make my last Will and Testament. I leave all my personal property, household goods to Mr. and Mrs. Ernest Alsgaard and family.

"To the Old Glory Lodge No. 146 and Morning Glory Lodge No. 143, I wish to leave my farm, the Southeast ¼ of Section 23, Richland Township not to be sold but rented to Odd Fellows or Rebbeccas, income to be used by both lodges.

"Burial expenses to be absorbed by both beneficiaries.

"Signed F. Eugene Stainsby.

"Witnessed by

J. F. Haas

Marvin McKay"

The will was admitted to probate in the County Court of Mc-Cook County. Lucy Schallenkamp, a sister of decedent and only surviving heir commenced this action for a declaration of her rights. She has appealed from an adverse judgment.

Old Glory and Morning Glory are both subordinate lodges affiliated with and chartered by the Independent Order of Odd Fellows of South Dakota. Both are located at Canistota. Their nonprofit, benevolent and fraternal character qualifies them for incorporation under the Benevolent Corporation Act of South Dakota as provided by SDC 11.14. Neither is incorporated.

The single question presented is whether or not a voluntary, unincorporated, benevolent and fraternal association may take real property by devise in this state.

At common law, an unincorporated association is not regarded as a legal entity and has no status distinct or apart from the persons comprising the group. 6 Am.Jur.2d, Associations and Clubs, § 1, p. 429. Any rules regarding them developed from rules of law relating to individuals. "At one time there were policy reasons why this should be so. Developments in England, discernible as early as the reign of Edward III, established that the capacity to act as a group in the legal system did not follow from the fact of being a group, but from a royal grant of the right to be a group. This theory, the franchise theory, which assisted the assertion and maintenance of royal power,

produced the common law rule that where a society which had not been incorporated presumed to act as a corporation the members would be guilty of a contempt of the monarch, inasmuch as they had usurped his prerogative. In such a climate of thought the royal courts would not be disposed to develop legal techniques to assist the unincorporated groups in the matter of holding property and other matters." Ford, Dispositions of Property to Unincorporated Non-Profit Associations, 55 Mich. L.Rev. 235 (1956).

Despite the common law unincorporated group activity has survived to serve many useful civic and social purposes. Their functions are varied. Best known and most numerous are voluntary, nonprofit, unincorporated groups or associations comprising church congregations, cemeteries, fraternal and benevolent orders, recreational, civic, political, educational and social clubs. Of necessity, many own property. Nevertheless, as pointed out in Vol. 1, Powell on Real Property, p. 486 "Some courts persist in the viewpoint that an unincorporated group is not an entity and hence that a deed to such a group, in its collective name, is a nullity. Like holdings have been made concerning wills which devise land to a group as such. An occasional statute retains this unrealistic attitude. The unrealism of the above position stems from the facts * * * that groups do function widely and variously in present day society and must be provided some means for collective acquisition, utilization and transfer of land." In the same vein Page on Wills, Vol. 1, § 17.14, p. 832 states: "The problem of the capacity of an unincorporated association to acquire real property as a testamentary donee is but an ordinary part of the much larger problem of the capacity of unincorporated groups to acquire real property in the group name by any means, to hold the same, and to transfer real property. Some states have maintained the position that an unincorporated association is not an entity, with the result that an inter vivos conveyance of real property to such an association, in its association name, is a nullity; and similar holdings based upon like reasoning have declared devises of land to unincorporated groups to be invalid. This highly unrealistic common law attitude has been abandoned by case

law in some states and by statutory law in a great many other states."

▮ The common law rule relating to ownership of property by unincorporated associations has been modified in this state by statute. SDC 56.0205 provides that: "A testamentary disposition may be made to any person capable by law of taking the property so disposed of, except that no corporation can take under a will, unless expressly authorized by its charter or by statute so to take." The word "person" is defined in SDC 65.0201(13) to mean and include "natural persons, partnerships, associations, and corporations." SDC 1960 Supp. 11.1304 and 11.1305[1] authorizes any unincorporated religious, benevolent, fraternal, charitable or educational association to mortgage or convey real estate owned by such association and prescribes the procedure for doing so. SDC 33.0408 authorizes an association to be sued in its common name. Further legislative recognition of an unincorporated association's right to own property is reflected in SDC 57.0311(3) which exempts certain property belonging to charitable, benevolent, and religious societies and SDC 57.0317 requires any company or association, whether incorporated or unincorporated, to file with the assessor, when required, sworn statements regarding its capital stock and real and personal property.

▮ As the trial court concluded, Old Glory Lodge No. 146 and Morning Glory Lodge No. 143 of Canistota, South Dakota are capable of owning real property and receiving real property by devise in this state by virtue of the cumulative effect of the above statutes.

Affirmed.

All the Judges concur.

---

1. Not repealed by Ch. 24, Laws of 1965 known as the "Non-Profit Corporation Act" which repeals Chapters 11.13, 11.14, 11.15, 11.16, 11.17, and 11.18 and Acts amendatory thereof of the South Dakota Code of 1939 for the reason that Ch. 22, Laws of 1943 as amended by Ch. 32, Laws of 1947 and Ch. 25 of the Laws of 1949 were inadvertently or mistakenly compiled into the SDC 1960 Supp. as Sections 11.1304 and 11.1305. Their compiled position under Title 11 dealing with the subject of "Corporations" is not determinative of legislative intent and obviously the legislature did not intend to repeal Ch. 32, Laws of 1947 and Ch. 25, Laws of 1949 relating to unincorporated associations by the enactment of Ch. 24, Laws of 1965.