LOVING SAVIOUR CHURCH, an
unincorporated religious
association, Plaintiff,

v.

UNITED STATES of America, Robert F.
Cunningham, George E. Turner, and 7
Unknown Persons, Defendants.

Civ. No. 82–4176.

United States District Court,
D. South Dakota, S.D.

Feb. 9, 1983.

Gary H. Hemminger, Englewood, Colo., Peter J. Horner, Sioux Falls, S.D., for plaintiff.

Larry Meuwissen and Frank G. Gokey, Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN B. JONES, District Judge.

### I.

The Internal Revenue Service levied upon and seized a building in the City of Huron, South Dakota; a forty-acre tract of farm land; three motor vehicles, including a 1978 Plymouth Sapporo, a 1982 Lincoln Continental, and a 1982 Cadillac DeVille; and two bank accounts in the Huron Farmers and Merchants Bank in connection with the federal income tax liability of Albert A. Anderson and Myrtle G. Anderson. Title to all of the property was held by plaintiff, Loving Saviour Church, an unincorporated association. The bank accounts were in the name of Loving Saviour Church and the Anderson Business Trust.

Plaintiff brought this action under 26 U.S.C. § 7426 [1] for a preliminary injunction to secure the release of the property and for damages resulting from the levy. Hearing on the preliminary injunction was combined with the trial on the merits, and the case was tried on December 16–17, 1982.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(e), and 26 U.S.C. § 7426.

Dr. Albert A. Anderson is a chiropractor, practicing in Huron, South Dakota, since 1959. He and Myrtle G. Anderson were married in 1964. The building in Huron has been used by Dr. Anderson as a residence and office since 1959; the 40-acre tract of farm land was owned by Mrs. Anderson prior to the marriage.

Dr. Anderson has been active in the First Baptist Church of Huron, the Christian Business Men's Committee, the Gideons, and the Christian Chiropractors Association. Mrs. Anderson graduated from the Chicago Evangelistic Institute's Bible College in 1949.

In 1975, Dr. and Mrs. Anderson attended a meeting sponsored by Michael Farber and purchased some trust forms. Mr. Farber was involved in the tax protest movement at that time. *United States v. Farber,* 630 F.2d 569 (8th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). Subsequently, the Andersons transferred all their property to the A & M Family Trust in late 1975. In 1976, a new A & M Family Trust and an Anderson Business Trust were set up to replace the 1975 trust.

In May, 1977, Dr. and Mrs. Anderson received Doctor of Divinity Degrees from the Life Science College, signed by William E. Drexler, as Dean. They at the same time received Certificates of Ordination in the Life Science Church headed by William Drexler. In September, 1977, Dr. Anderson received a charter from the Life Science Church, headed by William E. Drexler. Shortly thereafter, they set up the Life Science Church of Huron, with Dr. Anderson as pastor and trustee, Myrtle Anderson as trustee, Dr. Anderson's daughter, Alice Olsen, as trustee, and Mrs. Anderson's sister, Verda F. Rhoads, as trustee.

All of the property previously placed in the A & M Family Trust and the Anderson Business Trust was thereafter deeded to the Life Science Church, and Dr. Anderson took a vow of poverty.

By a charter dated December 1, 1977, Dr. Anderson established "The Church of Disciple Albert A. Anderson," although he continued to use the name of Life Science Church and the logo L S C. In late 1979 or early 1980, it appears that Dr. Anderson ceased using the name "Life Science Church" and commenced using the name "Loving Saviour Church," retaining the

---

1. Section 7426 permits a third party who claims an interest in or lien on property allegedly wrongfully levied upon by the United States to bring an action against the United States in a federal district court.

logo L S C. It appears that a bank account was opened in the Farmers & Merchants Bank of Huron, South Dakota, on December 13, 1979, in the name of Loving Saviour Church.

Dr. Anderson and his wife continued to occupy the Huron city property as a residence and chiropractic clinic. They used the automobiles titled in the name of the churches. The 1978 Plymouth automobile bore the personalized license plate "Myrtle." The cars are insured by Dr. Anderson in his own name because that was cheaper than insuring them in the church's name.

The financial affairs of the Andersons and the Loving Saviour Church have been kept secret. Dr. Anderson testified that he receives no benefits from his earnings as a chiropractor. He testified that he lives on money given him by the Loving Saviour Church, and that the source of all such funds is interest on principal from municipal bonds owned by the Loving Saviour Church.

■ The Andersons began having difficulties with the Internal Revenue Service soon after conveying their real estate to the trusts in 1975 and 1976. First, they were served a notice of deficiency for their 1976 and 1977 returns in the amount of $25,304 and $20,565, respectively. Although the Andersons petitioned to the United States Tax Court, that Court dismissed their case by Order of November 16, 1981, for failure to properly prosecute. These assessments were made upon these deficiencies on June 24, 1982. Next, in September, 1982, the Andersons were assessed $52,886 for 1978 taxes; $57,469 for 1979 taxes; and $62,807 for 1980 taxes. Consequently, tax liens arose on the dates of assessment. This suit does not contest the amount of taxes owed by the Andersons.[2]

## II.

■ The issue in this tax lien case is whether and to what extent the taxpayer

had property or rights to property to which the tax lien could attach. *St. Louis Union Trust Co. v. United States,* 617 F.2d 1293 (8th Cir.1980), citing *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

This issue must be decided under South Dakota law. *Aquilino, supra.*

■ Whether the taxpayer owned or had rights in the levied property is a factual question to be decided upon the unique facts of the particular case. *Flores v. United States,* 551 F.2d 1169 (9th Cir.1977); *Terrapin Leasing, Ltd. v. United States,* 449 F.Supp. 7, 43 AFTR2d 79–313 (W.D.Okl. 1978).

■ It is clear that an unincorporated association, like the plaintiff, can be a legal entity in this state, and, as such, can own property. S.D.C.L. 43–2–9; S.D.C.L. 2–14–2(16). *Schallenkamp v. Stevens, et al.,* 81 S.D. 573, 138 N.W.2d 657 (1966). The ownership of property is defined in S.D.C.L. 43–2–1, which states:

The ownership of a thing is the right of one or more persons to possess and to use it to the exclusion of others.

The South Dakota Supreme Court has interpreted the word "owner" to mean one who has legal or rightful title, whether or not in possession; but the word may depend for its significance upon the connection in which it is used, and at times may include one not holding legal title. *Lien v. Rowe,* 77 S.D. 422, 92 N.W.2d 922 (1958).

■ Therefore, the fact that title to the levied property is in the name of Loving Saviour Church is not dispositive of the issue here.

Two distinct lines of analysis are helpful in resolving the issue in this case: A) the fraudulent conveyance theory, and B) the alter ego theory.

## A.

The District Court recently faced the issue of whether taxpayers fraudulently con-

---

**2.** One who sues under 26 U.S.C. § 7426 cannot challenge the validity of an assessment. 26 U.S.C. § 7426(c). *Shannon v. United States,* 521 F.2d 56, 59 (9th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

veyed property in order to invalidate a federal tax lien. In *Carr Enterprises, Inc. v. United States,* 539 F.Supp. 528 (D.S.D.1982), the taxpayers owned a motel, a residence and motor vehicles. They were involved in income tax liability disputes with the Federal Government, and deficiencies were assessed against them. Prior to the assessments, the taxpayers transferred their interest in the above-described property to two corporations, which they controlled. They received issues of corporate stock as consideration for the transfers. This stock was immediately transferred to a newly formed church known as the Life Science Church. The taxpayers constituted two of the three church trustees, as well as the minister.

District Judge Porter determined that the property transferred to the corporations constituted a fraudulent conveyance within the meaning of S.D.C.L. 54–8–1.[3] The Court found that no clear business reason was given for the necessity of the transfers. Despite the transfers, the taxpayers continued in possession and control of the properties.

The facts in *Carr* closely parallel those in this case. After the Andersons formed the trusts, under which Dr. Anderson was the grantor, trustee and beneficiary,[4] they were involved in disputes with the Federal Government over their income tax liabilities. They were served a notice of deficiency for their 1976 and 1977 returns. They unsuccessfully petitioned the United States Tax Court. In the meantime, they transferred their property from the Trusts to the Life Science Church in April of 1978, and then to Loving Saviour Church in February of 1981. These transfers were for nominal consideration. The church has not received tax exempt status under 26 U.S.C. § 501(c)(3).[5]

The real and personal property levied upon in this case is in the possession of and under the control of Dr. and Mrs. Anderson. They continue to occupy the city property as a home, and Dr. Anderson continues to use it as a chiropractic clinic. He continues to practice his profession after becoming pastor of the churches involved.

The Andersons transferred the property in question from the ostensibly irrevocable trusts to the Life Science Church, then to the Loving Saviour Church. I find no legal impediment to their future transfers of the property to either themselves or to any person or group that they might desire. They clearly control the Loving Saviour Church.

I find that the property transfers by the Andersons to their Life Science Church and the Loving Saviour Church was a sham and constitutes fraudulent conveyance within the meaning of S.D.C.L. 54–8–1.

### B.

The second framework for analyzing the issue of property ownership is the alter ego theory. Alter ego means "other self"—where one person or entity acts like, or, for another to the extent that they may be considered identical. One frequently litigated state and federal law issue, involving an alter ego analysis, exists in actions seeking to "pierce the corporate veil."

The South Dakota Supreme Court has provided several factors to consider in deciding whether to disregard an entity and treat it as an alter ego of the individual founder, including: payment by corporation of individual obligations; use of the corporation to promote fraud, injustice or illegality; or if the circumstances justify it. *Curtis v. Vlotho,* 313 N.W.2d 469 (S.D.1981);

---

**3.** S.D.C.L. 54–8–1 provides that "Every transfer of property .... made ... with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor."

**4.** While this Court makes no determination whether the trusts were valid under state law, it appears doubtful that they are. *See Lewis G.*

*Allen Family Trust v. United States,* 49 AFTR2d 82–1404 (D.C.Kan.1982) (trusts similar to these declared invalid).

**5.** Moreover, it appears that this church would not qualify under this statute. *See, Church of the Transfiguring Spirit, Inc.,* 76 T.C. para. 76.1 (1981).

*Mobridge Community Industries, Inc. v. Toure, Ltd.,* 273 N.W.2d 128 (S.D.1978); *Larson v. Western Underwriters,* 77 S.D. 157, 87 N.W.2d 883 (1958).

Similarly, the alter ego and piercing the corporate veil theories have been used by federal courts to disregard corporations and other entities, where the use of such entities frustrates the clear intent of the law, *Valley Finance, Inc. v. United States,* 629 F.2d 162 (D.C.Cir.1980), or produces injustice and inequitable consequences. *Kapp v. Naturelle, Inc.,* 611 F.2d 703 (8th Cir.1979).

No uniform standards exist for determining when an entity is the alter ego of its founder—due mainly to the plethora of possible factual settings. The South Dakota Supreme Court states that in deciding whether the corporate veil will be pierced, "each case is *sui generis* and must be decided in accordance with its own underlying facts." *Mobridge Community Industries v. Toure, Ltd., supra,* citing *Brown Brothers Equipment Co. v. State,* 51 Mich.App. 448, 215 N.W.2d 591, 593 (1974).

█ Clearly, the Government's inability to satisfy legitimate tax debts may form a sound basis for disregarding a corporate form. *Valley Finance, Inc. v. United States, supra.* Courts confronting identical issues and facts similar to this case have developed several factors to consider.

In *All One Faith in One God State Universal Life Church, Inc. v. United States,* 76–1 T.C. para. 9409 (S.D.Cal.1976), the taxpayer attempted to shelter trade secrets by obtaining a church charter from Universal Life Church, Inc., and transferring assets into the newly formed church. The Internal Revenue Service levied upon church assets for the founder's tax deficiencies. The church started a wrongful levy action under 26 U.S.C. § 7426 and was denied relief. The Court concluded that the taxpayer retained ownership and control of the church assets because 1) he treated the church's assets as his own, 2) he carried insurance on church assets in his own name, 3) there were few internal controls, 4) almost all checks on the bank account were signed by the taxpayer, 5) church funds were used to pay personal expenses, 6) the close family relationship between the church officers and the taxpayer/founder. Although the Court did not decide the question of whether the taxpayer was the alter ego of the church, it did conclude that there was no wrongful levy upon the church's property because the taxpayer retained dominion and control over the trade secrets.

In the case of *Church of Hakeem, Inc. v. United States,* 99–2 T.C. para. 9651 (N.D. Cal.1979) the court determined that a church, which the taxpayer founded and controlled, was not entitled to injunctive relief, and its assets were not wrongfully levied upon because 1) there was such a unity of interest between the taxpayer and the church that the individuality or separateness of the two was not discernible, 2) the taxpayer exerted complete control over the church's assets, 3) the taxpayer bought property—such as cars and clothing—through church's name and used them for personal use, 4) the taxpayer kept substantial amounts of church funds in accounts under his own name, 5) the taxpayer lived very well, even though he claimed to own nothing. The Court's opinion stated that "persons who exercise all the rights of ownership (over property) may be determined to be the legal owners."

In *G.M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir.1975), reversed in part on other grounds, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Internal Revenue Service seized automobiles belonging to the company in order to satisfy the tax liabilities of the sole owner of the corporation. The I.R.S. determined that the corporation was the alter ego of the individual. The Court of Appeals agreed because: 1) taxpayer exerted substantial, if not exclusive, control over the company; 2) other directors were only figureheads and made no decisions; 3) the taxpayer transferred personal property to company for no consideration; 4) the taxpayer used corporate property (cars) in his individual business; 5) the taxpayer purchased car in corporate name and allowed wife to personally use it.

In *Terrapin Leasing, Ltd. v. United States,* 449 F.Supp. 7, 43 AFTR2d 79–310 (W.D.Okl.1978), another wrongful levy case, the Court determined that the corporation was the alter ego of the taxpayer, primarily relying on the *G.M.* decision.

█ Applying these guidelines to this case, it is apparent that 1) the Andersons treated church assets as their own in that their residence, business and farmland comprised the church property; 2) Dr. Anderson carried insurance on church assets in his own name; 3) there were few internal controls in the church—Dr. Anderson was the minister and a trustee along with his wife, daughter and sister-in-law; 4) church funds were used to pay personal expenses; 5) there was a close family relationship between the church officers and the taxpayer/founder; 6) the Andersons transferred property to the church for little or no consideration; 7) a car which was in the church's name, bore the personalized license, "Myrtle"; and 8) the Andersons are fully supported by the funds and property of the Loving Saviour Church in whatever style they themselves choose, and if the type of automobiles they drive is any indication of their lifestyle, they live very well.

Based on the foregoing, I find that the Loving Saviour Church is the alter ego of Dr. and Mrs. Anderson, and that the property being held in the church's name is in fact the property of Dr. and Mrs. Anderson.

While not directly bearing on the legal issues, I note parenthetically that the persons who influenced and helped the Andersons to set up the trusts and the churches, Michael Farber and William Drexler, are leaders in the tax protest movement in this country. *See United States v. Barney,* 674 F.2d 729 (8th Cir.1982), *cert. denied,* —— U.S. ——, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982); *United States v. Farber, supra; United States v. Hoopes,* 545 F.2d 721 (10th Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977).

It further appears that the use of the name Life Science Church is the means used by some tax protesters to avoid payment of Federal income taxes. *See United States v. Peister,* 631 F.2d 658 (10th Cir. 1980); *United States v. Pilla,* 550 F.2d 1085 (8th Cir.1977); *United States v. Boyer,* File CR 82–40021–01 (D.S.D.1982); *Herbert C. Graf,* para. 82,317 T.C.M. (P–H 1982); *Lloyd B. Miller,* para. 82,286 T.C.M. (P–H 1982); *William A. Young,* para. 81,109 T.C.M. (P–H 1981).

The evidence in this case convinces me that Dr. and Mrs. Anderson are sincere in their Christian beliefs, which they held both before and after 1975. The evidence also convinces me that their churches were set up primarily to avoid income tax liability when the trusts proved ineffectual for that purpose. Dr. Anderson was obviously convinced by Drexler that he could live tax free as a church.

To summarize, I find for the defendants and against the plaintiffs on all issues herein, both under the fraudulent conveyance and alter ego theories. I further find that the property being held in the name of the Loving Saviour Church or in the name of the Anderson Business Trust is in fact the property of Dr. and Mrs. Anderson, and may be levied on to satisfy their tax liabilities.

The plaintiffs' Motion for a Preliminary Injunction is denied, and the Clerk of Courts is directed to enter judgment for the defendants on all issues herein.