**GOTHIC EVANGELICAL CHURCH,
and Homer and Louise Johnson,
Petitioners,**

v.

**UNITED STATES of America,
Respondent.**

Civ. No. 4–84–694.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 15, 1984.

Thomas L. Iliff, Bloomington, Minn., for petitioners.

Beth A. Sabbath, Tax Div., Dept. of Justice, Washington, D.C., for respondent.

## MEMORANDUM AND ORDER

MILES W. LORD, Chief Judge.

This matter arises upon the motion of petitioners Gothic Evangelical Church and Homer and Louise Johnson to quash an Internal Revenue Service summons of records related to the Johnsons' potential tax liability for the years 1979–1983. Based upon the parties' pleadings, memoranda, affidavits and declarations, and upon the record developed at the evidentiary hearing held in open court on September 25, 1984, the petitioners' motion to quash the summons is denied.

Homer and Louise Johnson are husband and wife, and officers and directors of the Gothic Evangelical Church, a nonprofit corporation organized under the laws of Minnesota. The Johnsons' failure to file federal income tax returns after 1978 attracted the interest of the District Director of Internal Revenue at St. Paul, who assigned Revenue Agent Robin Olson to investigate the Johnsons' tax liability. Agent Olson determined that the Gothic Evangelical Church might be paying the Johnsons' personal living expenses. Agent Olson further determined that checks were issued to Homer Johnson on the Gothic Evangelical account at the Metro Bank in Bloomington, signed by the Johnsons and their sons Rhody and Ayrlahn, and deposited into the Johnsons' personal checking account at the Marquette National Bank in Minneapolis.

Thus convinced that the Johnsons were using the Church as a screen for obscuring the extent of their personal assets and income, Agent Olson issued two Internal Revenue Service summons to the Metro Bank and Kandiah Ramalngam, a bank vice-president and cashier, on July 23, 1984. These summons directed the production of records relating to transactions between the Johnsons and Gothic Evangelical Church, as well as the appearance of Mr. Ramalngam to provide testimony. Copies of the summons were also sent to the Johnsons' home address, which also happens to be the address of the Gothic evangelical church. The bank and Mr. Ramalngam declined to answer the summons, but have not been joined as parties to this petition.

The Johnsons filed their petition to quash the summons on behalf of the Gothic Evangelical Church on July 12, 1984. They argue that disclosure of records pertaining to transactions between them would have a chilling effect on the Church's First Amendment right of association, to the extent that disclosure of the names of the Church's contributors and beneficiaries would inhibit the solicitation of new members or the development and maintenance of new ministries. It must be borne in mind that the Johnsons themselves, not the Church, are the subjects of the IRS investigation. The summons directed to the Metro Bank, by its terms, only seeks records concerning "transactions or dealings with, for, or on behalf of Louise Johnson, Homer Johnson, and Gothic Evangelical Church." The summons is therefore substantially narrower and distinguishable from that condemned for overbreadth in *United States v. Life Science Church of America,* 636 F.2d 221 (8th Cir.1980).

Homer Johnson's testimony before this court shows that Gothic Evangelical Church neither actively seeks new members nor regularly solicits contributions. Indeed, the Church occasionally has even declined to accept outside contributions. Only five to ten individuals make contributions to the Church as frequently as every three months. In any event, because the tax-exempt status of the Church, its size, and its inclination or ability to attract con-

verts are not at issue in the IRS investigation into the Johnsons' finances, this court finds that the Church's First Amendment right to freedom of association is not implicated by the IRS summons.

Even if the Johnsons and Church could have succeeded in establishing that the IRS summons might infringe upon their First Amendment rights, the government has made ample showing that it is nonetheless entitled to the financial data it seeks, under the test announced in *United States v. Citizens State Bank*, 612 F.2d 1091 (8th Cir.1980). In that case, when the trial court declined to hear evidence as to the taxpayers' motive in refusing compliance with an IRS subpoena, the Court of Appeals for this Circuit held that when taxpayers make an initial showing of arguable First Amendment infringement, the burden shifts to the government to demonstrate its need for the material sought. There must be a rational connection between disclosure and a legitimate government objective, and the government's interest in the disclosure must be cogent and compelling. *Id.* at 1094.

The government has met that burden in this case. Its objective is legitimate—the determination and collection of personal income tax overdue and owing from 1979 on. Disclosure of the records is necessary to determine the extent of the Johnsons' tax liability. The integrity of the government's fiscal policies fundamentally depends upon its ability to collect taxes. The IRS had reason to believe that the Johnsons were using the Church as a means of concealing their taxable income. According to his own testimony, Homer Johnson is responsible as Church administrator for protecting the Church's assets. These assets primarily consist of a brokerage account and a private residence, title to each of which was transferred to the Church by Johnson himself. The Johnsons themselves make all decisions pertaining to the expenditure of those assets. In the similar circumstances encountered in *Loving Saviour Church v. United States*, 556 F.Supp. 688 (D.S.D. 1983), the court found that the church was

the alter ego of the taxpayers, based upon facts such as the following: 1) the unity of interest between the taxpayers and the church, 2) the taxpayers' complete control over the church's assets, 3) the close family relationship between the directors, organizers, and officers of the church, and 4) the fact that the church was the taxpayers' sole support. Without questioning the sincerity of the taxpayers' Christian beliefs, the *Loving Saviour* court found that the transfers of property from the taxpayers to the church amounted to fraudulent conveyances, that the church was the taxpayers' alter ego, and concluded that property held in the church's name could be levied upon to satisfy the taxpayers' personal income tax liabilities. *Id.* at 694.

Neither does this court feel obliged to pass upon the sincerity of the Johnsons' religious beliefs. Without intending to suggest that the Gothic Evangelical Church was founded as a cynical expedient to the end of tax avoidance, this court simply holds that the IRS summons to the Metro Bank is to be enforced. The Johnsons have not shown that they as individuals are entitled to exemption from personal income taxes, while the government has demonstrated amply that access to the Church's financial records is essential to a determination of the Johnsons' tax liability. This court is satisfied that full compliance with the summons will not interfere with any constitutional rights of either the Johnsons or the Gothic Evangelical Church. The government's motion for attorney's fees is denied. IT IS SO ORDERED.