1 F.3d 1246
Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GRANT INVESTMENTS FUND, A PARTNERSHIP, Plaintiff-Appellant,
v.
INTERNAL REVENUE SERVICE; Department of Treasury; United
States of America, Defendants-Appellees.
 No. 91-35994.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1993.
Decided July 19, 1993.
 
 Before SKOPIL, ALARCON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant Grant Investments Fund ("GIF" or the "Fund") appeals from the judgment in favor of the United States in this wrongful levy action brought pursuant to 26 U.S.C. Sec. 7426. GIF makes the following contentions in this appeal: One, the United States did not offer sufficient evidence to support a finding that Towe used GIF to perpetrate fraud; Two, the district court's finding that GIF was the alter ego of Towe was clearly erroneous; Three, the United States' seizure of GIF's property constituted a taking without compensation in violation of the Fifth Amendment; Four, the United States' seizure of GIF's property the silver dollars violated due process because GIF was not given a hearing before the seizure of GIF's property. We affirm because we conclude that the district court's finding that GIF was the alter ego of Towe was not clearly erroneous. We also hold that the United States did not have to show fraud, and that GIF was not entitled to a pre-seizure hearing.
 
 I.
 
 3
 GIF brought a wrongful levy action against the United States pursuant to 26 U.S.C. Sec. 7426.[1] GIF alleged that on or about July 20, 1988, the United States, through a notice of levy, seized 6,040 silver dollars in an attempt to satisfy the delinquent federal income tax liabilities of Edward Towe and his wife, Florence. GIF claimed that the United States' levy was wrongful because it is the owner of the silver dollars.
 
 
 4
 In the district court, the United States disputed GIF's claim to ownership of the silver dollars on alternative grounds. First, the United States maintained that Towe owned the silver coins at the time of the levy because he never made a valid transfer of the coins to GIF. Second, the IRS asserted that its levy was proper because GIF is the alter ego of Edward Towe.
 
 
 5
 GIF's action was tried to the district court without a jury. The record shows that Towe and Ellis Jones each purchased a one-half interest in 12,081 silver dollars on or before July, 1978. The coins were thereafter stored at the First National Bank of Ekalaka, Montana. Neither Jones nor Towe received a written document memorializing the sale of the coins to them.
 
 
 6
 GIF relied extensively on Towe's testimony to support GIF's contentions that there was a valid transfer of the coins to GIF, and that GIF was not the alter ego of Towe. The district court found that
 
 
 7
 this testimony [regarding Towe's alleged transfer of the coins to GIF] lacks credibility, based on Edward Towe's demeanor on the witness stand and on his imprecise recollection of the date and nature of the transfer. More generally, the Court finds that much of Edward Towe's testimony is incredible. His position in the litigation as both taxpayer and manager of [GIF] creates numerous conflicts of interest. As a consequence, Towe's testimony is replete with self-serving statements. In reaching its Findings and Conclusions ... the Court has considered and discounted those portions of Edward Towe's testimony that lack credibility.
 
 
 8
 The district court reserved judgment as to whether Towe effected a valid transfer of the coins to GIF "because such a finding is not critical to the outcome of this case."
 
 
 9
 The district court also found that Edward Towe created GIF in 1955 as an investment partnership for the benefit of his family and friends. Towe continues to invest the assets of GIF for Towe's family, friends, and for various trusts and foundations that were either established or managed by Edward Towe. Edward Towe has been the Fund's only manager since its creation. The district court further found, with regard to the IRS' alter ego claim, that 1) Towe is the manager of GIF; 2) Towe made all the decisions with regard to the administration of GIF; 3) Towe invested in GIF in the past; 4) Towe used the Fund to discharge personal obligations, shield himself from personal liability, and for personal gain; 5) Towe used his own funds to pay GIF's debts; and 6) the major investors in GIF are related to Towe, or trusts and foundations owned or controlled by him.
 
 
 10
 Based on these findings, the district court concluded that GIF was the alter ego of Edward Towe, and the IRS' levy on the 6,040 silver coins was not wrongful.
 
 II.
 
 11
 For the first time at oral argument, GIF contended that the alter ego doctrine cannot be used to justify a levy on assets of a partnership. In its opening brief, however, GIF conceded that "the alter ego doctrine is an equitable doctrine which may apply to any particular entity but also cautions that the doctrine's application to a particular entity varies with the facts and the make-up of the particular entity at issue." GIF's opening brief at 26 n. 31. Because of GIF's concession that the alter ego doctrine may be applied "to any particular entity", the United States did not discuss the question whether it applies to a partnership in its responsive brief. We decline to consider a theory raised for the first time at oral argument that is inconsistent with the position taken in a party's briefs before this court. The unfairness of such a tactic to an opposing party is manifest. See Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir.1988) (refusing to address party's contention that was first raised at oral argument), cert. denied, 489 U.S. 1100 (1989).
 
 III.
 
 12
 GIF makes two contentions regarding the district court's judgment that GIF was the alter ego of Towe. GIF first argues that the United States failed to provide sufficient evidence that GIF was used to perpetrate fraud. GIF also argues that the district court's finding that GIF was the alter ego of Towe was clearly erroneous.
 
 
 13
 GIF contends that the Government offered no evidence that GIF was used to perpetrate fraud or defeat the public convenience. GIF argues that the Government's failure to offer evidence of fraud requires us to reverse the district court's judgment.
 
 
 14
 Whether the district court was required to make a finding of fraud before it could conclude that GIF was the alter ego of Towe is a question of law which we review de novo. See Towe Antique Ford Foundation v. Internal Revenue Service, slip op. at ---- (---- 1993) (holding that whether the United States had to prove fraud before the district court could conclude that a corporation was the alter ego of the taxpayer was a question of law that is reviewed de novo). GIF's argument that the United States had to prove fraud is without merit. Montana law does not require a showing of fraud before a court can disregard the separate identity of a business entity in tax collection cases. See id. (stating that a showing of fraud is not necessary in order for the district court to conclude that a corporation is the alter ego of the taxpayer). The district court only had to conclude that GIF was used for an improper purpose, such as the evasion of taxes. See id. (corporation could be disregarded as a entity distinct from the taxpayer with a showing that the taxpayer used the corporation to evade paying his income taxes).
 
 
 15
 The district court did not make an explicit finding that Towe used GIF to evade taxes. However, such a finding was implicit in the court's judgment. The district court must have found that Towe used GIF to avoid paying taxes, because without such a finding, it would not have entered judgment in favor of the United States. We will reverse an implicit finding only if it is clearly erroneous. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1344 (9th Cir.1981) (affirming district court's implicit finding because it was not clearly erroneous).
 
 
 16
 We can affirm a district court's judgment based on the district court's implicit findings. For example, in Twentieth Century-Fox, appellant Dunnahoo appealed his contempt order for violating an earlier judgment enjoining him from dealing in copyrighted materials belonging to other motion picture distributors. Id. at 1339. Appellant argued that one film, "The MGM Story" did not have copyright protection. At issue was whether appellant's print of the film was an authorized publication. Id. at 1343. This court reasoned that "[t]he [district] court implicitly found that the print in Dunnahoo's possession was not an authorized publication because Dunnahoo was found to have violated the judgment with respect to 'The MGM Story', thus indicating that copyright protection for the work was not lost by the release of an authorized print without notice." Id. at 1344. We upheld the district court's implicit finding because it was not clearly erroneous. Id.
 
 
 17
 We also relied on a district court's implicit finding in Churchill v. F/V Fjord, 892 F.2d 763 (9th Cir.1988), cert. denied, 497 U.S. 1025 (1990). In Churchill, the plaintiffs instituted a wrongful death action against F/V Fjord arising from the collision of two skiffs. Id. at 766. Among other arguments, the plaintiffs alleged that F/V Fjord was liable in rem for the torts of one Russell McLinn in his operation of Fjord's skiff. The district court dismissed the plaintiffs' in rem claim. Id. at 767. In affirming the district court's ruling on that matter, we reasoned that
 
 
 18
 [i]n order to conclude that the Fjord was not liable in rem, the district court must have found either that the skiff is not part of the Fjord's equipage or that Russell McLinn was not in lawful possession, or both. Thus, we may affirm the district court's conclusion of no in rem liability if either possible implicit finding is not clearly erroneous.
 
 
 19
 Id. This court affirmed the district court's ruling "solely on the basis that the evidence in the record supports an implicit finding that Russell McLinn was not in lawful possession of the Fjord's skiff." Id.
 
 
 20
 The evidence in the record supports the district court's implicit finding that Towe used GIF to avoid paying taxes. The district court found that Towe's testimony regarding his alleged transfer of the coins to GIF was incredible. The court further found that Towe used his own personal funds and GIF's assets interchangeably, and that he used GIF to shield himself from personal liability. Finally, GIF did not list the coins as an asset of the partnership on its tax returns until after the IRS had seized the coins in an attempt to satisfy Towe's tax liability. This evidence permits the conclusion that one of Towe's purposes in using GIF was to attempt to hide his assets from the IRS by using "shell games" with GIF. Thus, the district court's implicit finding that Towe used GIF to evade his taxes is not clearly erroneous.
 
 IV.
 
 21
 GIF also argues that the district court's finding that GIF was the alter ego of Towe was clearly erroneous. Whether a business entity is the alter ego of a taxpayer is essentially a factual question which this court reviews for clear error. See Wolfe v. United States, 798 F.2d 1241, 1243 n. 1 (9th Cir.1986) (stating that the district court's determination that a corporation is the alter ego of the taxpayer is reviewed for clear error), amended, 806 F.2d 1410 (9th Cir.1986), cert. denied, 482 U.S. 927 (1987). We must look to state law to determine whether a business entity is an alter ego of the taxpayer. See Wolfe v. United States, 806 F.2d 1410, 1411 n. 3 (9th Cir.1986) (stating that state law is used to determine if a corporation is the alter ego of the taxpayer), cert. denied, 482 U.S. 927 (1987). The parties do not dispute that we must apply Montana law in this matter.
 
 
 22
 GIF notes that the factors the district court used to find an alter ego relationship were developed in the context of disregarding the separate identity of a corporation, not a partnership. GIF argues that in determining whether GIF was the alter ego of Towe, we should use the factors listed in Loving Saviour Church v. United States, 728 F.2d 1085 (8th Cir.1984), because that case dealt with an unincorporated religious association.
 
 
 23
 GIF's reliance on the Loving Saviour Church factors is misplaced. The district court in Loving Saviour Church used the factors developed to determine if a corporation was the alter ego of an individual to analyze whether the unincorporated association was the alter ego of the taxpayers. See Loving Saviour Church v. United States, 556 F.Supp. 688, 691-92 (D.S.D.1983) (using factors developed under South Dakota law to pierce the corporate veil to determine if the unincorporated association was the alter ego of the taxpayers). On appeal, the Eighth Circuit affirmed the district court's alter ego analysis. Loving Saviour Church, 728 F.2d at 1086.
 
 
 24
 GIF did not argue to the district court that the factors that can be considered in determining whether a corporation is the alter ego of an individual are inapplicable in determining whether a partnership is a taxpayer's alter ego. As a general rule, we will not hear arguments presented for the first time on appeal. United States v. Whitten, 706 F.2d 1000, 1012 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984). We have carved out three limited exceptions to this rule: 1) where a new issue arises while the appeal is pending because of a change in the law; 2) where the issue is purely one of law and does not affect or rely on the factual record; or 3) where plain error has occurred and injustice might otherwise result. Id. None of the exceptions in Whitten apply in this case. GIF has not pointed to an intervening change in the law since the judgment. The question whether other factors should be considered in determining whether the alter ego doctrine should be applied to a partnership was not presented to the district court. No factual showing was made that it would be inequitable to do so. As a result, the United States was denied the opportunity to rebut GIF's contentions with evidence that it would not be inequitable to apply factors concerning stockholders and directors to GIF. Finally, GIF has not demonstrated plain error or that injustice has resulted from the United States' seizing assets that Towe attempted to hide in GIF to avoid his tax obligations. Accordingly, we decline to consider whether the district court should have considered other factors in determining that GIF was the alter ego of Towe.
 
 
 25
 It is well settled that creditors can reach property which ostensibly belongs to a third party if the third party is the alter ego of the taxpayer. See Hando v. PPG Indus., Inc., 771 P.2d 956, 960 (Mont.1989) (alter ego doctrine applied to corporation); see also Valley Finance, Inc. v. United States, 629 F.2d 162, 171-172 (D.C.Cir.1980) (alter ego doctrine applied to corporation), cert. denied, 451 U.S. 1018 (1981). The factors relevant to a finding of alter ego include, but are not limited to:
 
 
 26
 1. Whether the individual is in a position of control or authority over the entity;
 
 
 27
 2. Whether the individual controls the entity's actions without need to consult others;
 
 
 28
 3. Whether the individual uses the entity to shield himself from personal liability;
 
 
 29
 4. Whether the individual uses the business entity for his or her own financial benefit;
 
 
 30
 5. Whether the individual mingles his own affairs in the affairs of the business entity;
 
 
 31
 6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts.
 
 
 32
 See generally Hando, 771 P.2d at 960; Drilcon, Inc. v. Roil Energy Corp., Inc., 749 P.2d 1058, 1063-64 (Mont.1988) (applying alter ego doctrine to corporation); Meridian Minerals Co. v. Nicor Minerals, Inc., 742 P.2d 456, 462 (Mont.1987) (same).
 
 
 33
 Under Montana law, the party seeking to disregard the business entity must show that it is the "alter ego" of the individual. Drilcon, 749 P.2d at 1064. In addition, a showing must be made that the entity was used as a subterfuge for an improper purpose. Id.
 
 
 34
 The district court found that 1) Towe is the manager of GIF; 2) Towe managed the Fund in his sole discretion; 3) that Towe exerted virtually complete control over GIF; 4) that the major investors in GIF are owned or controlled by Towe; 5) that Towe used his own funds to pay GIF's debts; and 6) that Towe used GIF to discharge personal obligations, shield himself from personal liability, and for personal gain.
 
 
 35
 These factual findings are not clearly erroneous. Edward Towe admitted at trial that he is the manager of GIF and that he exercises complete control over GIF. Towe further admitted that he has used his own assets to pay GIF's debts. The evidence supports the district court's finding that the major investors in GIF are controlled by Towe. Towe is the trustee of the Heartland Trust, trustee of the S.O. Tow Trust, president and director of the Towe Antique Ford Foundation, trustee of the Lewis Rector Trust, trustee of the Irene Koch Trust, and president and director of the Towe Foundation. These participants held more than 70% of the assets "invested" in GIF. Moreover, almost all the other "investors" in GIF are related to Towe.
 
 
 36
 The district court's finding that Towe used GIF to discharge personal obligations and to shield himself from personal liability is also supported by the record. For example, Towe admitted at trial that he was indebted to Montana Bancsystem in the approximate amount of $180,000. In order to partially discharge his debt, Towe conveyed a secured note from James C. Stegmeier made payable to GIF to Montana Bancsystem. The note was for the sum of $40,000 and bore interest at the rate of 15% per annum. In return, Towe gave GIF his unsecured promissory note for the sum of $42,267.29. The amount owed on Towe's note was equal to the amount owed by Stegmeier at the time of the transfer. Towe's note bore interest at a 5% lower rate than the Stegmeier note. At the time of this transaction Towe was insolvent and had a negative net worth of $1,672,000. Towe approved this transaction as manager of GIF. At the time of the trial, Towe had not made any payments of either principal or interest to GIF even though five years had passed since the transaction. Moreover, Towe did not list his debt to GIF on GIF's financial statements. In addition, Towe admitted at trial that he made loans to himself and approved these loans as manager of GIF. GIF's "loans" to Towe were not secured by any of Towe's assets, nor were the loans memorialized by a promissory note.
 
 
 37
 Further, Edward Towe, acting as manager of GIF, purchased from the Bank of Wibaux, Montana, a delinquent loan owed by Edward Towe to the Bank of Wibaux. Later, Edward Towe, again acting as manager of GIF, accepted his personal interest in the S.O. Tow Trust in satisfaction of the personal debt which he now owed to GIF. The debt Edward Towe owed to GIF exceeded $200,000. His interest in the S.O. Tow Trust was worth less than $100,000. Towe's admissions, the Stegmeier transaction, and the Bank of Wibaux transaction clearly show that Towe used GIF to discharge personal obligations and for personal gain.
 
 
 38
 The court's use of these facts to find an alter ego relationship was not clearly erroneous. Towe's control of GIF, the fact that the major investors in GIF are controlled by Towe, and the fact that he used his own funds and GIF's assets interchangeably satisfy the factors traditionally relied on by Montana courts to find an alter ego relationship between an individual and the business entity he controls. See Drilcon, 749 P.2d 1064 (court finds that individual is the alter ego of corporation because individual was a director and officer of the corporation, took all actions for the corporation without consulting other officers or directors, used his personal funds to pay corporate debts, and used the corporation to shield himself from personal liability); see also Valley Finance, 629 F.2d at 172 (court permits assets of corporation to be seized to pay for individual's tax liability because individual used corporation as an "incorporated pocketbook"). We conclude that the district court's finding that GIF was the alter ego of Towe was not clearly erroneous.
 
 V.
 
 39
 GIF argues that the district court's judgment constitutes a taking of the property of the partners of GIF without just compensation in violation of the Fifth Amendment to the United States Constitution. GIF argues that there are over thirty investors in GIF, and that it violates the Fifth Amendment to take their property to satisfy Towe's tax liabilities. GIF failed to present this argument to the district court. As discussed above, we will not hear an argument not presented to the trial court unless it falls within the three narrow exceptions recognized by this court in Whitten. 706 F.2d at 1012. GIF has failed to demonstrate that any of the exceptions to our general rule apply in this case.
 
 VI.
 
 40
 GIF contends that the IRS' seizure without an opportunity to be heard prior to the seizure violated GIF's right to due process under the Fifth Amendment. The United States does not dispute GIF's claim that it received no hearing before the levy. The United States, however, contends that GIF has waived its argument because it failed to present this argument to the district court. We will consider GIF's argument on appeal because whether a levy without a pretaking hearing violates due process is a question of law and the pertinent record has been fully developed. See United States v. Patrin, 575 F.2d 708, 712 (9th Cir.1978) (stating that we can review issues neglected in the trial court if the issue is purely one of law and the pertinent record has been fully developed).
 
 
 41
 GIF was not entitled to a hearing before the silver dollars were levied on by the IRS. In Tavares v. United States, 491 F.2d 725 (9th Cir.1974), cert. denied, 420 U.S. 925 (1975), we held that a judicial hearing was not required prior to a taking of the taxpayer's property. Id. at 726. "[T]he right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery, is paramount." Id. (quoting Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 599 (1931)).
 
 
 42
 AFFIRMED.
 
 BEEZER, Circuit Judge, dissenting:
 
 43
 Because I believe Montana would respect the existence of Grant Investments Fund, I would reverse the district court's judgment and remand for factual findings on whether Edward Towe transferred the 6,040 silver dollars to Grant.
 
 
 44
 * In 1955, Towe and others formed Grant, an investment partnership. Grant's 1987 tax return showed that by the end of that year, Grant had 25 partners and assets worth over $1.7 million. Thirteen partners were Towe's family members or unrelated persons. Each of these persons had invested an amount between $600 and $149,200, and their collective investment totalled $422,700. Other partners were trusts or foundations for which Towe acted as trustee or president. The return reported income of over $82,000 to one partner, and many partners had thousands of dollars of reported income.
 
 
 45
 Towe has made all investment decisions for the partnership. One investment in 1979 purportedly involved the transfer of 6,040 silver dollars to Grant to pay a debt Towe owed Grant. The district court found it unnecessary to decide whether this transfer had occurred. The court also found that in a few other transactions, Towe used Grant funds for his personal benefit. Disregarding Grant's existence, the court ruled the Internal Revenue Service properly seized the silver dollars in 1988 to satisfy Towe's tax liability.
 
 II
 
 46
 If Towe transferred the coins to Grant and Grant's existence is respected, the IRS wrongfully levied upon the coins. 26 U.S.C. Sec. 7426(a). To satisfy Towe's tax liability, the IRS could have levied upon "all property and rights to property" belonging to Towe. 26 U.S.C. Sec. 6331(a). This authority, however, never extends beyond Towe's rights in property. Id.; United States v. National Bank of Commerce, 472 U.S. 713, 725 (1985). Without the partners' consent, Towe had no right to possess the coins for other than partnership purposes. Mont.Code Ann. Sec. 35-10-502(2)(a). The wrongful levy action demonstrates the lack of consent to the IRS's seizure.
 
 III
 
 47
 Montana law determines whether Grant is liable for Towe's debt. Wolfe v. United States, 798 F.2d 1241, 1244 n. 3 (9th Cir.1986), amended, 806 F.2d 1410, cert. denied, 482 U.S. 927 (1987). Neither party, however, cites any Montana authority that supports or prohibits disregarding any form of business entity to hold the entity responsible for a person's liability. Grant contended in the district court that "some of the factors" relied upon in Valley Finance, Inc. v. United States, 629 F.2d 162 (D.C.Cir.1980), a case holding a corporation responsible for a person's federal tax liability, are "instructive" here. Grant emphasized differences exist between a corporation and a partnership like Grant and argued none of the factors considered in Valley Finance were present here. Grant further maintained the circumstances showed it was not "merely an extension" of Towe. Grant never contended or conceded this case should be decided by weighing factors considered in cases like Drilcon, Inc. v. Roil Energy Corp., 749 P.2d 1058 (Mont.1988), which hold a person liable for a corporation's debt. In any event, "no concrete formula" determines when the existence of a business entity will be disregarded, and the relevant factors vary with the circumstances and equities of each case. Hando v. PPG Indus., 771 P.2d 956, 960 (Mont.1989).
 
 
 48
 The circumstances here indicate no "subterfuge or evasion" relating to the IRS and show Grant has an identity separate from Towe. Board of Railroad Comm'rs. v. Reed, 58 P.2d 271, 272 (Mont.1936). Nothing suggests the partners formed Grant to evade the federal income tax or that Towe has managed its assets for that purpose in any transaction. To the contrary, Grant has reported significant amounts of income to partners. The coin transfer was alleged to have occurred nine years before the seizure, and the IRS does not argue the transfer defrauded the government. Regardless of Towe's control over some entity partners, persons other than Towe may enjoy beneficial ownership of those entities, and many partners are family members or others who have made substantial investments. Permitting the IRS to levy upon the coins because Towe used Grant assets for his personal gain only compounds Towe's wrongdoing against the Grant partners. The equities of this case do not warrant "sweep[ing Grant] aside." Id.