**In re FAITH MISSIONARY BAPTIST CHURCH, Debtor.**

**FAITH MISSIONARY BAPTIST CHURCH, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 91–61074.
Adv. No. 91–6211.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Sept. 6, 1994.

James Michael Bandy, Tyler, TX, for plaintiff/debtor.

Thomas M. Herrin, Dept. of Justice, Tax Div., Dallas, TX, for defendant.

## MEMORANDUM OPINION

C. HOUSTON ABEL, Chief Judge.

Before the Court is a Complaint to Compel Turnover of Property filed by Faith Missionary Baptist Church ("FMBC"). FMBC alleges that the Internal Revenue Service ("IRS") wrongfully levied against property belonging to FMBC in order to satisfy the personal tax liabilities of Roger and Nan Gorham (hereafter sometimes referred to collectively as the "Gorhams"). Accordingly, FMBC seeks turnover from the IRS of approximately $60,000.00 levied prepetition and $14,967.50 levied postpetition. The IRS asserts that the levies were proper pursuant to 26 U.S.C. §§ 6331[1] and 6332.[2] In its counterclaim, the IRS asserts that the assets listed in FMBC's schedules are not part of FMBC's estate. Alternatively, the IRS asserts that FMBC is the Gorhams' alter ego or that the assets were fraudulently conveyed to FMBC in order to hinder collection efforts of an existing creditor. Accordingly, the Court should annul the automatic stay and permit the IRS to enforce its levies.[3] After a two day trial, the Court took this matter under advisement. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Where

---

1. Section 6331 authorizes the IRS to levy upon "all property and rights to property" belonging to any person who neglects or refuses to pay any tax.

2. Section 6332 requires any person in possession of property or rights to property subject to a levy to surrender such property or rights to the IRS upon demand.

3. Also before the Court is a Motion to Annul Stay filed by the IRS. Because the assertions by the IRS in the motion are similar to the assertions in the counterclaim, the Court consolidated this adversary and the motion for trial.

appropriate, findings of fact shall be deemed conclusions of law and *vice-versa.*

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O).

### FACTS [4]

A. *1970s*

In July 1975, Roger Gorham was ordained as a minister by Union Grove Baptist Church in Troup, Texas. Following his ordination, Roger Gorham served as pastor of Union Grove Baptist church until a doctrinal dispute arose within the church. To resolve the dispute, Roger Gorham and several others left Union Grove Baptist Church in August 1976 and organized a new church as an unincorporated association—FMBC. At an organizational meeting held on October 3, 1976, Articles of Faith were adopted and trustees for FMBC were elected. Ronny Melton, Nathan Holdren, and Jerry Don Fussell were elected as trustees and Roger Gorham was chosen to serve as the pastor. The initial congregation was approximately ten members. After the creation of FMBC, the church petitioned and was accepted to join three baptist missionary associations. FMBC joined the Smith County Baptist Missionary Association in 1976, the Baptist Missionary Association of Texas in 1977, and the Baptist Missionary Association of America in 1979.

For the first few weeks, services were held in the homes of members of FMBC. Prior to the holding of the October 3rd organizational meeting, members of FMBC learned of an available building formerly used by Bible Baptist Church in Troup, Texas ("Building").[5] The Building was abandoned after members of Bible Baptist Church joined Overton Bible Baptist Church in Overton, Texas. Negotiations ensued between Roger Gorham and the pastor of Overton Bible Baptist Church, Jack McGoy, regarding the acquisition of the Building by FMBC. McGoy asserted that he owned the Building and he agreed to sell the Building to FMBC if a $600.00 down payment was paid. After paying the $600.00, FMBC hired an attorney, Roland Matthews, to provide legal advice regarding the purchase of the Building. While performing a title search, Matthews discovered that the deed records reflected that the Building was actually owned by the trustees of Bible Baptist Church of Troup, and not McGoy. Accordingly, FMBC secured quitclaim deeds from the former trustees of Bible Baptist Church of Troup and filed the quitclaim deeds in the deed records of Smith County.

The evidence is uncontradicted that FMBC operated as a functioning church until 1980. Both regular Sunday services and monthly Wednesday night business meetings were held for which minutes were maintained and majority rule controlled. All members of FMBC present at the business meetings were entitled to vote on matters being discussed. Roger Gorham served as the moderator of the business meetings and was not permitted to vote unless there was a tie. In August 1979, Roger Gorham resigned as pastor of FMBC expressing an intention to travel to Mexico as a missionary and assist other churches.[6]

B. *1980s*

Shortly after the resignation of Roger Gorham, the evidence is not as clear regarding the actual existence of FMBC as a functioning and distinct church. Wes Kimmey replaced Roger Gorham as pastor. However, prior to the end of 1980, Kimmey left FMBC

---

4. Because neither Roger nor Nan Gorham testified during the proceeding before this Court, and an attempt to serve a subpoena on them was unsuccessful, the Court must rely on their testimony given in a hearing before the Honorable William Wayne Justice in August 1990. PLAINTIFF's Ex. X. Any reference to testimony by the Gorhams is derived from the August 1990 hearing.

5. Located at 405 South Joy Street.

6. Roger Gorham subsequently did not travel to Mexico, citing personal family problems as the reason.

and FMBC ceased using the Building [7] when all members not related to the Gorhams either transferred their memberships to other churches or stopped attending FMBC.[8] Included in those transferring their memberships were the original trustees of FMBC.[9] Further, although Roger Gorham resigned as pastor in 1979, he unaccountably reassumed his position as pastor in approximately October 1980. The record is void of evidence as to exactly when Roger Gorham returned as pastor and the authority for his reappointment. Also, beginning with the time Roger Gorham returned as pastor and continuing until October 1990, FMBC's only trustees and officers were the Gorhams.[10]

After 1980, any religious services that were held occurred in the home of a family member of the Gorhams, typically the home of the son of the Gorhams—Mike Gorham. Rarely did someone not related to the Gorhams attend the religious services.[11] Although members of FMBC, both Nan Gorham and the Gorhams' daughter Christy Gorham occasionally attended services at other churches.[12] Also, very few business meetings were held.[13] If a business meeting was held, the only individuals who are known to have attended were the Gorhams and two of their three children—Christy and Mike.[14] While it is questionable whether FMBC operated as a functioning church after 1980, there is evidence that Roger Gorham continued to perform some sacerdotal functions. Roger Gorham conducted two marriage ceremonies, albeit one included his daughter.[15] Beyond that, the Gorhams generally met privately with the immediate family to hold "prayer meetings".

Despite the questionable operation of FMBC as a religious entity after 1980, the evidence is clear that the business operation of FMBC was active and successful. Starting in late 1981, FMBC acquired legal title to assets with considerable income producing capabilities. Specifically, the following significant acquisitions are known to have occurred:

---

7. FMBC permitted Lighthouse Baptist Mission to use the Building after FMBC ceased its use of the Building. Instead of charging Lighthouse Baptist Mission rent, FMBC required it to forward 10% of its church receipts to the Baptist Missionary Association of America. As of August 1990, Lighthouse Baptist Mission continued to use the Building.

8. Specifically, each of the witnesses called by FMBC to establish that FMBC was created as an actual church testified that either they are no longer a member of FMBC or that they had not attended FMBC in more than twelve years. *See* TESTIMONY OF RONNY MELTON (Record at 29); NATHAN HOLDREN (Record at 61); STEVEN ANDERSON (Record at 101); KEITH ANDERSON (Record at 111). The lone exception was Susan McElroy. McElroy testified that she attended a religious service at FMBC shortly before Roger Gorham conducted her marriage ceremony on July 20, 1984. Following the date of her marriage, McElroy did not attend another service at FMBC until 1993.

9. The following individuals also served either as a trustee or as an officer of FMBC:

Ben Smalzried—Trustee Oct. 1979—Oct. 1980
Julie Smalzried—Clerk Oct. 1979—Oct. 1980
Barbara Melton—
Treasurer Oct. 1979—Oct. 1980

10. Roger Gorham served as the only trustee and Nan Gorham held the title of clerk and treasurer.

11. Bill Ussery testified before the Honorable William Wayne Justice that, although he is not a member of FMBC, he attended a "prayer meeting" around 1988 at the home of Elmore Gorham (Roger Gorham's father) in Lancaster, Texas after receiving a personal invitation from Roger Gorham. Ussery stated that those who attended the prayer meeting were generally "in-laws" of the Gorhams.

12. Roger Gorham testified that Christy Gorham, the Gorhams' youngest daughter, is an active member of another church.

13. The only documentation offered as evidence that indicates at least one business meeting was held after 1980 was a Resolution adopted on October 9, 1986. The Resolution authorizes Roger Gorham to sell a ½ acre tract of land for $35,000.00. *See infra* note 16.

14. Nan Gorham further testified that no business meeting had been held within a year prior to the district court hearing in August 1990 at which a vote was taken and someone not related to the Gorhams was present.

15. Roger Gorham married Roger McElroy and Susan Willard on July 20, 1984, and Darin Harley and Shelly Gorham on August 30, 1986.

(1) December 30, 1981, the Gorhams conveyed title to approximately 27½ acres of land to FMBC through a quitclaim deed;

(2) August 24, 1982, Roger Gorham's parents, Elmore and Violet Gorham, assigned to FMBC for no consideration a working interest in nine oil and gas leases located on approximately 50 acre tract in Ohio County, Kentucky;

(3) December 31, 1982, Starfish Ranch, Inc., an entity for which Roger Gorham was president and Nan Gorham was secretary, conveyed title to approximately ½ acre tract of land it owned to FMBC through a quitclaim deed; [16]

(4) March 14, 1983, Roger Gorham's parents assigned an additional working interest and an overriding royalty interest in the same nine oil and gas leases located in Kentucky;

(5) June 9, 1983, FMBC purchased, via Roger Gorham acting as trustee, a 1983 GMC van from Barrett GMC Truck, Inc. for $22,390.50 for the personal use of Roger Gorham; [17] and

(6) September 27, 1984, FMBC purchased, via Roger Gorham acting as trustee, approximately 200 acres for $26,770.01 at a public auction held by the Master Commissioner of Ohio Circuit Court, Kentucky.[18]

In October 1982, FMBC opened a checking account [19] at Arp State Bank with the Gorhams and their two oldest children (Mike and Shelly) signing the signature card.[20] According to the testimony of Roger Gorham, Shelly Gorham had signature authority over the account even though she had not been a member of FMBC since 1980. The account served as the depository for the significant payments to FMBC by Ashland Oil, Inc. for the church's interest in the crude oil produced from the land in Kentucky. From 1982 through 1988, approximately $724,000.00 was paid to FMBC by Ashland Oil.[21] Shortly after depositing the payments from Ashland Oil into FMBC's bank account, the Gorhams made large withdrawals either in the form of a check or by wire. During 1983, FMBC's bank account records reflect that $132,619.74 of the payments from Ashland

16. Starfish Ranch, Inc. conveyed title to the same tract of land again to FMBC through a warranty deed on September 28, 1984. No explanation was provided for this apparent double conveyance. However, FMBC did execute on September 28, 1984, a deed of trust on the same tract of land to secure a $25,000.00 loan from Arp State Bank. On October 10, 1986, FMBC conveyed title to the tract of land, via Roger Gorham acting as trustee, to Norman and Kathleen Fine ("Fines") through a warranty deed with vendor's lien. Consideration was the execution by the Fines of a promissory note payable to Arp State Bank in the amount equalled to the outstanding indebtedness owed to Arp State Bank ($27,456.29) by FMBC plus the execution of a $7,500.00 promissory note payable to

FMBC. On September 17, 1987, FMBC transferred its lien on this land to Arp State Bank.

17. The Court notes that FMBC paid the sales tax even though it claims it is a tax exempt organization.

18. Roger Gorham testified that this land has coal deposits and oil reserves valued in excess of $1,000,000.00.

19. Account number 20–2377–6.

20. The original signature card was just signed by the Gorhams on October 8, 1982. Sometime afterwards, a new signature card was made adding the names of Shelly and Mike.

21. This was the net amount paid to FMBC. Before the deduction of severance and windfall taxes, the gross amount attributable to FMBC's interest in the crude oil production was $782,373.23. The breakdown of the payments to FMBC is as follows:

| Year | Gross Amt. | Severance Tax | Windfall Tax | Net Amt. |
|------|-----------|---------------|--------------|----------|
| 1982 | $73,803.21 | $3,321.16 | $4,266.70 | $66,215.35 |
| 1983 | 425,819.62 | 19,159.71 | 16,902.71 | 389,757.20 |
| 1984 | 81,035.41 | 3,646.60 | 1,799.38 | 75,589.43 |
| 1985 | 110,991.50 | 4,994.59 | 52.85 | 105,944.06 |
| 1986 | 25,361.06 | 1,141.25 | 0.00 | 24,219.81 |
| 1987 | 690.45 | 31.08 | 0.00 | 659.37 |
| 1988 | 64,671.98 | 2,910.27 | 0.00 | 61,761.71 |
| TOTAL | $782,373.23 | $35,204.66 | $23,021.64 | $724,146.93 |

Severance and windfall taxes were withheld because Roger Gorham refused to provide Ashland Oil required information to support his assertion that FMBC is a tax exempt organization.

Oil were either never deposited into the account or were withheld from deposits. What became of the non-deposited funds is unknown. Also, the Gorhams transferred at least $58,314.00 to Starfish Ranch, an entity the Gorhams controlled, and wired approximately $211,000.00 to Elmore Gorham. Additionally, $29,000.00 was withdrawn by means of checks with no clear identity as to whom received the money.[22] From 1984 through 1988, the bank account records reflect that $191,826.81 was either never deposited in the account or withheld from deposits.[23] No clear explanation or evidence was offered as to what happened to these funds. Further, approximately $45,900.00 was wired from the account, principally to either Roger Gorham or Elmore Gorham, and over $54,600.00 was withdrawn in the form of checks payable to either cash, the Gorhams, Mike Gorham, or Shelly Gorham. Once again, no clear explanation or evidence was offered as to what happened to these funds. Finally, of all the checks known to have been drawn on the bank account between 1982 and 1988, very few appear to be for ecclesiastical purposes.

After 1988, the Gorhams continued their practice of either withholding some funds when making a deposit or withdrawing the funds shortly thereafter by writing a check payable to cash. Because of the numerous transactions during the mid and late 1980s by FMBC at Arp State Bank which were just under $10,000.00, the bank started maintaining a Currency Transaction Report on the larger transactions under the $10,000.00 reporting requirement.[24] During 1989, five Currency Transaction Reports were prepared regarding transactions using FMBC's bank account number. These five reports reflect that at least $44,700.00 was either withheld from funds that were deposited or withdrawn by checks payable to cash.[25] Each report identifies Roger Gorham as the individual who conducted the transaction on behalf of FMBC. All the Currency Transaction Reports note that Roger Gorham either refused to provide the bank his social security number or that he claimed he did not have a social security number. Further, the bank also prepared a Currency Transaction Report on March 10, 1989, pertaining to a transaction not using FMBC's bank account, but apparently an account in the name of Roger Gorham individually. According to the testimony of Ann Russell,[26] Roger Gorham wired to Eugene Precious Metals, Inc. $9,950.00 to pay for gold coins that he had purchased. Before wiring the funds to pay for the coins, Roger Gorham inspected and weighed each coin at the bank. However, Roger Gorham testified that neither he nor his wife received a salary from FMBC and that he only made about two to three thousand dollars a year performing "odd jobs" which paid for their day-to-day living expenses. Thus, the Court has unanswered questions as to how an individual with so little income could independently afford to purchase the gold coins.

The Court also has unanswered questions regarding the Gorhams' abilities to repay six loans they had with Arp State Bank under their individual names. These loans were in addition to three loans FMBC had with Arp State Bank.[27] From 1982 through 1987, the

22. Copies of checks number 117, 118, 121, and 122 are unavailable. Thus, the identity of the payees is unknown.

23. Included in this amount is $137,172.30 of payments from Ashland Oil which were never deposited into the account in 1984 and 1985.

24. Federal law requires financial institutions to report all currency transactions that are greater than $10,000.00. *See* 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a)(1).

25. At least one other transaction occurred on March 10, 1989, for which apparently no Currency Transaction Report was prepared. In this transaction, $9,000.00 was withheld by Roger Gorham from a $58,269.29 check payable to FMBC from Ashland Oil. The balance of the check was deposited into FMBC's bank account.

26. Russell is an Assistant Vice President of Arp State Bank who handled the transaction for Roger Gorham.

27. On September 28, 1984, FMBC borrowed $25,000.00 (loan no. 40160). Then on January 9, 1986, FMBC borrowed $20,000.00 (loan no. 69841) and $3,094.52 (loan no. 69830). However, it appears from the evidence that the later two loans were essentially a renewal of the first loan. The principal of the later two loans equaled the unpaid balance of the first loan.

Gorhams borrowed over $9,000.00, with each loan being repaid within three months.[28] Both the purpose and more importantly the source of repayment of the loans was never explained to the Court.

Although it is clear that FMBC was active during the 1980s in secular activities, FMBC did continue to forward some money to the Baptist Missionary Association of America. From 1986 through 1989, FMBC forwarded to the Baptist Missionary Association of America $27,644.41.[29] However, most of this money ($26,270.02) was forwarded after the IRS started its investigation of the Gorhams in 1988. The IRS began investigating the Gorhams because they had not filed individual tax returns since 1978.

## C. 1990s

During 1990, Arp State Bank prepared three more Currency Transaction Reports regarding transactions using FMBC's bank account number. Each report reflects that Roger Gorham withheld $9,500.00 from a deposit being made to FMBC's bank account. Payments from Ashland Oil were once again the source of the funds.[30] All three Currency Transaction Reports note that Roger Gorham refused to provide his social security number, and two of reports note that Roger Gorham refused to provide his date of birth.

On July 20, 1990, the IRS mailed to the Gorhams a Notice of Deficiency based on the IRS's determination that FMBC was their alter ego. Thus, the IRS attributed the payments FMBC received from Ashland Oil as actually being payments to the Gorhams individually. Pursuant to the tax assessments, the following deficiencies and additions to tax were assessed against Roger Gorham:

| | | Additions to Tax | | |
| Tax Yr. | Deficiency [31] | § 6651 | § 6653(a) | § 6654 |
|---|---|---|---|---|
| 1983 | $75,245.50 | $18,812.00 | $3,762.00 | $4,605.00 |
| 1984 | 12,160.00 | 3,040.00 | 608.00 | 765.00 |
| 1985 | 17,775.00 | 4,444.00 | 889.00 | 1,019.00 |

Also, the following deficiencies and additions to tax were assessed against Nan Gorham:

| | | Additions to Tax | | |
| Tax Yr. | Deficiency [32] | § 6651 | § 6653(a) | § 6654 |
|---|---|---|---|---|
| 1983 | $71,908.00 | $17,977.00 | $3,595.00 | $4,400.00 |
| 1984 | 7,889.00 | 1,972.00 | 394.00 | 496.00 |
| 1985 | 13,102.00 | 3,276.00 | 655.00 | 751.00 |

Additionally, the IRS filed on July 30, 1990, a Notice of Federal Tax Lien with the County Clerk of Ohio County, Kentucky. To further its collection efforts, the IRS served a Notice of Levy on Arp State Bank[33] and Ashland Oil.[34] As a result of the levies, Arp State Bank and Ashland Oil forwarded to the IRS approximately $60,000.00.

To stop the collection effort by the IRS, FMBC filed a complaint in the United States

---

**28.** The following is a brief summary of the six loans:

| Borrower | Loan No. | Amount | Loan Date | Maturity Date |
|---|---|---|---|---|
| Nan Gorham | 74660 | $2,000.00 | 9/15/82 | 10/12/82 |
| Roger Gorham | 75750 | 1,000.00 | 10/4/82 | 10/12/82 |
| Roger Gorham | 78340 | 2,000.00 | 11/23/82 | 12/3/82 |
| Roger Gorham | 10530 | 1,500.00 | 4/15/87 | 7/14/87 |
| Roger Gorham | 16721 | 1,000.00 | 7/14/87 | 9/18/87 |
| Roger Gorham | 28140 | 1,503.72 | 12/17/87 | 1/12/88 |

**29.** The following are the known payments made by FMBC to the Baptist Missionary Association of America (acct. no. 2138):

| | |
|---|---|
| 1986 | $122.55 |
| 1987 | 923.60 |
| 1988 | 328.24 |
| 1989 | 26,270.02 |
| | $27,644.41 |

**30.** The Ashland Oil checks being deposited totaled $25,877.45.

**31.** Plus 50% of the interest due on the deficient amount for the years 1983 through 1985.

**32.** Plus 50% of the interest due on the deficient amount for the years 1983 through 1985.

**33.** Notice of Levy served on Arp State Bank is dated July 19, 1990.

**34.** Notices of Levy served on Ashland Oil are dated: August 29, 1990; October 18, 1990; January 2, 1991; February 20, 1991; March 19, 1991; April 22, 1991; June 5, 1991; and September 5, 1991.

District Court for the Eastern District of Texas[35] alleging that the liens and levies were wrongful and in violation of 26 U.S.C. § 7426(a) and (b)(1).[36] During a two day hearing on FMBC's request for preliminary injunction, the issues before this Court were argued. At the district court hearing, Roger Gorham testified that at the last prayer meeting held prior to the hearing,[37] that only he, Nan Gorham, Christy Gorham, and Mike Gorham attended. During the hearing, Roger Gorham testified that another prayer meeting was held at Wyatt's Cafeteria.[38] Also, Nan Gorham testified that she and Roger Gorham had taken trips, with several being out of the country,[39] in which FMBC paid their expenses. After considering the evidence and testimony, the Honorable William Wayne Justice denied FMBC's request for preliminary injunction holding that FMBC failed to meet its burden of demonstrating an irreparable injury and that FMBC had an adequate remedy at law. In his order,[40] Judge Justice stated that the testimony of the Gorhams presented "fairly compelling evidence" that FMBC was the alter ego of the Gorhams.[41] Following the entry of the order denying preliminary injunction, FMBC file a motion for nonsuit[42] which was granted.[43]

In an apparent attempt to separate the identities of FMBC and the Gorhams, in October 1990 Roger Gorham allegedly removed himself as trustee and named Daniel Page trustee of FMBC. Simultaneously, Nan Gorham allegedly resigned as clerk and treasurer with no individual assuming these positions. Also, on October 22, 1990, FMBC made its last donation to the Baptist Missionary Association of America—$5,635.01.

After the unsuccessful attempt to enjoin the IRS in district court, FMBC brought its battle with the IRS to this Court by the filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code on June 18, 1991. Page signed the Schedules and Statements on behalf of FMBC. Pursuant to Exhibit "A" attached to the Schedules and Statements, FMBC listed total assets of $157,080.00 and total liabilities of $5,567.11 as of April 3, 1991.[44] FMBC denied in the Schedules that it owes any money to the IRS, thus the IRS was not listed as a creditor. Of the three unsecured creditors listed, one is related to Roger Gorham and the other is under the direction of Roger Gorham. The largest unsecured creditor is Roger Gorhams' father, Elmore Gorham. Elmore Gorham is listed as having a claim for $52,000.00 for his "operator's fee" incurred on April 1, 1990.[45] The second largest unsecured creditor is Faith Mineral Trust, which uses the same mailing address as FMBC. Roger Gorham is listed as the contact person for

**35.** Styled *Faith Missionary Baptist Church v. United States of America*, Civil Action No. 6:90 CV 331.

**36.** Section 7426 permits a third party who claims an interest in or lien on property that is alleged to be wrongfully levied upon by the United States to bring an action seeking relief in the form of an injunction, recovery of the property or recovery of the proceeds from the sale of the property.

**37.** The prayer meeting was held at Mike Gorham's house the day before the start of the hearing.

**38.** Nathan Holdren testified that he also attended the prayer meeting at Wyatt's Cafeteria. This prayer meeting was the first such meeting held under the name of FMBC that he had attended since 1980.

**39.** Nan Gorham stated that in 1989 and 1990, she and Roger Gorham traveled to the Grand Cayman Island and to Mexico respectively.

**40.** Entered on August 28, 1990.

**41.** Unlike this Court, Judge Justice had the benefit of live testimony by the Gorhams. Fortunately, FMBC included as part of its evidence in this proceeding the transcript of the hearing before Judge Justice.

**42.** Filed on May 15, 1991.

**43.** Order granting motion for nonsuit and dismissing case without prejudice was entered on May 30, 1991.

**44.** Neither of these amounts correspond to the assets and liabilities reflected in the Schedules. According to the Schedules, FMBC had total assets of $102,080.00 and total liabilities of $61,-567.11 as of April 4, 1991.

**45.** The basis of this "operator's fee" was not divulged to the Court.

Faith Mineral Trust in the List of Creditors Holding 20 Largest Unsecured Claims. Faith Mineral Trust is listed as having a claim for $4,596.26 as a result of operating costs associated with the working interest in the oil leases with the debt being incurred on April 1, 1991. At the first meeting of creditors held on July 22, 1991, Page appeared as the representative of FMBC. In the notes prepared by the presiding officer of the meeting it is stated that Page "did not appear to have personal knowledge of facts in Schedules although he was signatory." Finally, on September 24, 1991, a debtor-in-possession account was opened at Arp State Bank with Page as the sole name on the signature card.

Subsequent to the filing of the petition, the IRS received $14,967.50 from Ashland Oil as a result of a postpetition levy. To continue its collection efforts, the IRS filed the Motion to Annul Stay [46] which is before the Court today. FMBC filed an objection to the Motion to Annul Stay and filed a Motion for Contempt for Violation of 11 U.S.C. § 362 against the IRS. At the hearing on the two motions, the Court denied FMBC's motion to hold the IRS in contempt and continued the IRS's Motion to Annul Stay until the outcome of this adversary proceeding. However, the Court did order the IRS to deposit all funds it received postpetition from Ashland Oil into the registry of the Court. With accrued interest, the funds deposited into the registry of the Court total $15,234.80.

In approximately February 1993, Roger Gorham requested Susan McElroy to meet the Gorhams at the office of J.M. Bandy, the attorney for FMBC. While there, McElroy was informed by the Gorhams that she had been "voted" to replace Page as trustee of FMBC.[47] The assumption of the title of trustee came as a complete surprise to McElroy because she had not attended a religious service or business meeting at FMBC since

1984. Additionally, she had no prior knowledge that her name had been placed for nomination. McElroy accepted the position based on her long friendship with the Gorhams.

On the Sunday before the trial of this matter,[48] Roger Gorham presided over a religious service at the Building.[49] Sixteen people attended the service with only five being members of FMBC—the Gorhams, McElroy, Steven Anderson, and his brother Keith Anderson.[50] Both Keith and Steven Anderson testified that, although they still consider themselves members of FMBC, this was the first time that either of them had attended FMBC since 1980. This was also the first time that McElroy had attended FMBC since 1984, even though she was "elected" trustee approximately three months prior to the service. Following the service, a business meeting was held that was the first such meeting attended by persons other than the Gorhams and their two children since 1980. At the five minute meeting, Roger Gorham announced that he was resigning as pastor but that he intended to keep the church van in order to continue with his evangelism. Roger Gorham expressed an intention of traveling to Mexico in order to start a mission. Roger Gorham also stated that Charles Plunkett, a minister of another church, was interested in leasing the Building. Accordingly, the members agreed to open discussions with Plunkett to determine if he would rather lease the Building or replace Roger Gorham as pastor of FMBC. Additionally, McElroy was elected as secretary of FMBC.

Since its formation, FMBC has had no employees. All work on behalf of FMBC has been performed on a volunteer basis. Thus, no funds have been expended to pay for the salaries of any individual. Also since its

---

46. Filed on August 22, 1991.

47. McElroy started signing operating reports which are filed with this Court on February 20, 1993. She testified that Roger Gorham and Bandy have assisted her in completing the operating reports.

48. May 1, 1993.

49. Roger Gorham testified at the August 1990 hearing that FMBC had not met in the building since 1980.

50. Nathan Holdren and his four children, as well as the wives of Steven and Keith Anderson, also attended.

formation, FMBC has never requested tax exempt status from the IRS.

### D. Events Subsequent To The Trial Of This Adversary

Because the issues in this adversary are tangential to the Gorhams' challenge of their tax assessments in a proceeding before the United States Tax Court in Houston, Texas,[51] this Court has delayed its ruling pending the outcome of the Gorhams' tax case. On December 27, 1993, the Gorhams filed a Status Report stating that the tax court proceeding has been dismissed. Pursuant to a copy of the order entered by the tax court which was attached as an exhibit to the Status Report, the following deficiencies and additions to tax were determined to be owing by the Gorhams: [52]

*Roger Gorham*

| Tax Yr. | Deficiency [53] | Additions to Tax | | |
| | | § 6651 | § 6653(a) | § 6654 |
|---|---|---|---|---|
| 1983 | $75,245.50 | $18,812.00 | $3,762.00 | $4,605.00 |
| 1984 | 12,160.00 | 3,040.00 | 608.00 | 765.00 |
| 1985 | 17,775.00 | 4,444.00 | 889.00 | 1,019.00 |
| 1986 | 7,783.00 | 1,943.00 | 389.00 | 376.00 |
| 1987 | 6,526.00 | 1,632.00 | 326.00 | 352.00 |
| 1988 | 10,092.00 | 2,523.00 | 505.00 | 645.00 |

*Nan Gorham*

| Tax Yr. | Deficiency [54] | Additions to Tax | | |
| | | § 6651 | § 6653(a) | § 6654 |
|---|---|---|---|---|
| 1983 | $71,908.00 | $17,977.00 | $3,595.00 | $4,400.00 |
| 1984 | 7,889.00 | 1,972.00 | 394.00 | 496.00 |
| 1985 | 13,102.00 | 3,276.00 | 655.00 | 751.00 |
| 1986 | 4,056.00 | 1,014.00 | 203.00 | 196.00 |
| 1987 | 2,103.00 | 526.00 | 105.00 | 114.00 |
| 1988 | 4,233.00 | 1,058.00 | 212.00 | 271.00 |

Further, on August 10, 1993, the Gorhams filed *pro se* a Complaint for Declaratory Judgment against FMBC.[55] In the complaint, the Gorhams requested that the Court "declare that Faith Missionary Baptist Church is the alter ego of Plaintiff[s] and all of the Bankrupt Debtor Defendant's estate is the community property of Plaintiff[s]." Shortly after the filing of the complaint, FMBC filed an Expedited Motion for Summary Judgment seeking a judgment that FMBC is not the alter ego of the Gorhams and that the Gorhams have no right or claim to the property listed as being part of FMBC's estate.[56] The Gorhams filed no response to the Expedited Motion for Summary Judgment nor did they make any attempt to prevent the entry of summary judgment. Although not listed as a party, the IRS intervened and filed the sole response to the Expedited Motion for Summary Judgment.[57] The IRS asserted in the response that FMBC's Expedited Motion for Summary Judgment was an attempt to circumvent the adversary proceeding currently before the Court, thus the Court should delay any ruling on the Expedited Motion for Summary Judgment until after a final judgment is entered in the instant adversary proceeding. Concurrently with the filing of its response, the IRS filed in the instant adversary proceeding a Motion to Supplement the Record with the Complaint for Declaratory Judgment filed by the Gorhams against FMBC.[58] No objection to the Motion to Supplement the Record was filed. After a hearing,[59] the Court denied FMBC's Expedited Motion for Summary Judgment and granted the IRS's Motion to Supplement the Record.[60]

---

51. Styled *Roger and Nan Gorham v. Commissioner of Internal Revenue*, DOCKET No. 23719–90.

52. The tax court's Order and Decision was entered on December 2, 1993.

53. Plus 50% of the interest due on the deficient amount for the years 1983 through 1987.

54. Plus 50% of the interest due on the deficient amount for the years 1983 through 1987.

55. Styled *Roger and Nan Gorham v. Faith Missionary Baptist Church*, Adv. No. 93–6057.

56. Filed on August 17, 1993.

57. Filed on September 22, 1993.

58. Filed on September 22, 1993.

59. Held on October 27, 1993. Although properly noticed of the hearing, the Gorhams failed to attend.

60. Both orders were entered on November 1, 1993. The Court notes that it initially consolidated the instant adversary proceeding with the adversary proceeding filed by the Gorhams. Subsequently, however, an order dismissing the later adversary proceeding was entered on February 23, 1994. No affirmative relief was ever granted in the dismissed adversary proceeding.

**466**

## ANALYSIS

### A. *Alter Ego*

■■■ If FMBC is indeed the alter ego of the Gorhams, the IRS may properly levy upon assets held in FMBC's name in satisfaction of the Gorhams' tax liability. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977). The fact that an entity may be a church and entitled to First Amendment protection under the United States Constitution does not automatically shield assets held in the name of the church from satisfying the tax liability of an individual. *See Loving Saviour Church v. United States,* 728 F.2d 1085 (8th Cir.1984) (church established as an unincorporated association was the alter ego of the individual who was both a pastor and trustee of the church, thus IRS levy not wrongful); *United States v. Kitsos,* 770 F.Supp. 1230 (N.D.Ill. 1991) (individual's continued exercise of dominion over assets purportedly transferred to the church was grounds to disregard the church's independent existence), *aff'd,* 968 F.2d 1219 (7th Cir.1992); *Church of Hakeem v. United States,* No. C–79–0741 SW, 1979 WL 1475, 79–2 USTC ¶ 9651 (N.D.Cal.1979) (levy not wrongful because of unity of interest between the individual and the church). The determination of whether FMBC is the alter ego of the Gorhams is a question of state law. *Zahra Spiritual Trust v. United States,* 910 F.2d 240, 242 (5th Cir.1990). The IRS's inability to satisfy legitimate tax debts may form a sound basis to disregard the legal fiction between a taxpayer and an entity. *Towe Antique Ford Foundation v. IRS,* 999 F.2d 1387, 1391 (9th Cir.1993); *Loving Saviour Church v. United States,* 556 F.Supp. 688, 692 (D.S.D.1983), *aff'd* 728 F.2d 1085 (8th Cir.1984).

■■■ In Texas, the legal fiction between an individual and an entity may be pierced if the entity "has been used as part of a basically unfair devise to achieve an inequitable result." *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.,* 11 F.3d 65, 67 (5th Cir.1994) (quoting *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986)). Three broad theories have been developed in Texas which permit a court to disregard the legal fiction of an entity: (1) the entity is the alter ego of an individual; (2) the entity is used for illegal purposes; or (3) the entity is used as a sham to perpetrate a fraud. *Western Horizontal Drilling,* 11 F.3d at 67. Thus, alter ego theory is one of several methods available to the IRS in its attempt to pierce the veil surrounding this unincorporated association known as FMBC.

■■■ Generally courts are required to determine whether an individual should be held liable for the debts of a corporation. In this case, however, the IRS is attempting to hold assets held in the name of FMBC accountable for the tax liability of the Gorhams. This approach is known as "reverse piercing" and is valid under Texas law. *Zahra Spiritual Trust,* 910 F.2d at 243–44. Upon a finding that the Gorhams treated FMBC as their alter ego, assets held in the name of FMBC may be used by the IRS to satisfy the tax liabilities of the Gorhams.

■■■ The seminal case on alter ego in Texas is *Castleberry.*[61] In *Castleberry,* the Texas Supreme Court defined alter ego as an entity "organized and operated as a mere tool or business conduit of another". *Castleberry,* 721 S.W.2d at 272. When determining whether an alter ego relationship exists, the Court must consider the unity between the entity and the individual and whether holding only one liable for a debt would result in injustice. *Id.* Relevant factors to consider include "the total dealings of the [entity] and the individual, including the degree to which ... formalities have been followed and ... property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the [entity], and whether the [entity] has been used for personal purposes." *Id.*

---

61. In 1989, the Texas Legislature amended the Texas Business Corporation Act to overrule *Castleberry* "to the extent that a failure to observe corporate formalities is no longer a factor in proving the alter ego theory in contract claims."

*Western Horizontal Drilling,* 11 F.3d at 68. Because no contract claim is involved in the instant case, the holding in *Castleberry* is still relevant to the issue before the Court.

After reviewing the facts in the totality, the Court is of the opinion that FMBC and the Gorhams have been one in the same since 1981. The transferring of significant assets into the name of FMBC coincidentally occurred after the active involvement with FMBC by individuals not related to the Gorhams ceased. By the end of 1980, the only individuals with active control over the assets of FMBC were Roger Gorham as the sole trustee and Nan Gorham as the sole officer. Based on the evidence presented, the Gorhams, and sometimes their children, exercised unfettered control over all assets acquired by FMBC after 1980. This is partially exemplified by the fact that Shelly Gorham had signature authority over FMBC's bank account even though she was not a member of FMBC. With the exception of the purchase of the 200 acres in Kentucky and the GMC van, FMBC acquired its significant assets for little or no consideration from either the Gorhams, Roger Gorham's parents, or an entity the Gorhams controlled—Starfish Ranch.

FMBC argues that the Gorhams are individuals with little money and assets, thus the IRS failed to prove that the Gorhams personally benefitted by using FMBC's funds. No explanation or evidence, however, was offered by FMBC to detail what the Gorhams did with the payments received by FMBC from Ashland Oil. The evidence is clear that most of the payments from Ashland Oil either were never deposited into FMBC's bank account or the funds were withdrawn by the Gorhams shortly after being deposited. The Gorhams transferred an extraordinary amount of FMBC's funds to either themselves or to Elmore Gorham and no accounting of the funds was tendered to the Court. The overwhelming presumption based on the evidence is that assets held in the name of FMBC were being used by the Gorhams individually for their personal benefit. Specifically, the purchase of the gold coins by Roger Gorham, the Gorhams' travels abroad, the repayment of personal loans incurred by Roger and Nan Gorham individually, and the

payment of tuition and books for Roger Gorham to attend college [62] are strong evidence that the Gorhams were spending money in excess of their alleged means. Further, it is undisputed that the Gorhams have exclusive use of FMBC's GMC van and a travel trailer purchased by FMBC. The Court is faced with no other reasonable conclusion but that the Gorhams used the assets of FMBC as if the assets were theirs.

Although the Gorhams assert that all their decisions regarding FMBC's assets were subject to objections by members of FMBC, the evidence is clear that there were no active members of FMBC during the 1980s other than the Gorhams and their children. The only "members" of FMBC who approved decisions were the Gorhams and their two children, with Roger Gorham implementing the decisions. After 1980, no third party participated in the decisions regarding the use of FMBC's assets and the Gorhams were not accountable to anyone but themselves regarding the decisions. Very few, if any, formal business meetings were held between 1980 and the date the petition was filed. Also, no witness with actual knowledge regarding the operation of FMBC during the 1980s was produced by FMBC during the trial to establish that FMBC's assets were used purely for ecclesiastical purposes.[63] Based on the evidence submitted to the Court, it appears that most of FMBC's assets were used for secular activities.

The Court finds it striking that each witness on behalf of FMBC testified that they either had no knowledge of what assets FMBC acquired after 1980 or that they were surprised to learn for the first time during the trial the amount of income paid to FMBC by Ashland Oil. The only two witnesses who testified that they are and have been a member of FMBC since its inception, Steven and Keith Anderson, admitted that neither had attended FMBC since 1980 and that neither were aware of assets FMBC acquired after 1980. The absence of the Anderson brothers

---

**62.** Roger Gorham testified that during the late 1980s, he began taking classes at the University of Texas at Tyler.

**63.** Although the Gorhams testified before the Honorable William Wayne Justice, neither could explain what happened to the payments never deposited or the funds withdrawn thereafter.

from FMBC continued until the Sunday before the start of the trial. Regarding Susan McElroy, her involvement with FMBC during the 1980s was limited to a couple of weeks in July 1984, when Roger Gorham conducted her marriage ceremony. McElroy also had no knowledge regarding the acquisition and use of FMBC's assets prior to her becoming trustee in February 1993. Thus, the only individuals with full knowledge of the assets held under the name of FMBC and the income derived therefrom are the Gorhams.

The strongest witness called by FMBC to establish its continuing existence up to the date of the trial was Jane Holcomb. Her testimony, however, provided weak support for the proposition that FMBC was an entity separate and distinct from the Gorhams. Holcomb joined FMBC in October 1990, shortly after Roger Gorham baptized two of her daughters.[64] Over the next fourteen months Holcomb attended approximately ten prayer services purportedly held under the name FMBC, although none were at the Building.[65] On January 10, 1992, Roger Gorham baptized her youngest daughter.[66] Subsequent to the baptism in January 1992, neither Holcomb nor her daughters have attended FMBC. At no time did Holcomb hold a position of responsibility or was she aware that FMBC owned other assets beside the Building and the GMC van.

 The Court surmises that Roger Gorham's resignation as trustee and Nan Gorham's resignation as clerk and treasurer was merely a sham in an attempt to stop the IRS from levying on assets held in the name of FMBC. Not until after the IRS started to proceed against FMBC's assets did the Gor-

hams attempt to separate their identity from FMBC. However, the first individual to assume the trustee position after Roger Gorham, Daniel Page, clearly had little knowledge regarding the operation of FMBC. That lack of personal knowledge was evident to the presiding officer of the first meeting of creditors. After the removal of Page as trustee, McElroy assumed the position of trustee. Her testimony demonstrated that she is merely a "figurehead" for the Gorhams. First, she was "voted" to become the purported sole trustee of FMBC even though she had not attended FMBC since 1984. McElroy first learned of her new title after she was asked by Roger Gorham to meet the Gorhams at the office of FMBC's attorney. Secondly, McElroy's testimony illustrated an almost complete lack of understanding on her part of the facts surrounding the acquisition of assets by FMBC, the disposition of the funds paid to FMBC by Ashland Oil prior to her becoming trustee, and of the legal problems between FMBC and the IRS. Lastly, it appears from McElroy's testimony that the Gorhams are still very closely involved with the operation of FMBC. McElroy testified that it is her understanding that the Gorhams are trustees of FMBC even though Roger Gorham purportedly resigned as pastor of FMBC. If the Gorhams are trustees, that fact conflicts with an answer by FMBC to an interrogatory, wherein FMBC stated that the Gorhams are not trustees. It is evident to the Court that the Gorhams are still exercising enough control and dominion over FMBC that McElroy believes that they are trustees. Further, although FMBC offered some evidence that it continues to exist as a church,[67] it failed to offer credible evi-

---

**64.** Gorham baptized Holcomb's two oldest daughters on August 19, 1990.

**65.** Since joining FMBC, all services that she had attended were either held at a lake or in an individual's home.

**66.** Roger Gorham used the baptistery of New Life Baptist Church.

**67.** The Court makes no finding whether FMBC qualifies as a tax exempt church pursuant to 26 U.S.C. § 501(c), although the Court is skeptical FMBC would qualify. *See Church of Scientology*

*of Ca. v. Commissioner*, 823 F.2d 1310 (9th Cir. 1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988) (church was not entitled to tax exempt status because significant amounts of the church's funds were used to benefit the founder of the church); *In re Dube*, 169 B.R. 886, 893 (Bankr.N.D.Ill.1994) (to qualify under § 501(c), a church should have at a minimum its own "body of believers or communicants that assembles regularly in order to worship" and the church must be "reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine").

dence to rebut the overwhelming evidence that the Gorhams treated FMBC as their alter ego.

 Finally, in Texas, an unincorporated association is not considered a separate legal entity apart from its individual members. *Cox v. Thee Evergreen Church,* 836 S.W.2d 167, 169 (Tex.1992). Because of the lack of separate legal status, legal title to property acquired by an unincorporated association must be held by a trustee. *Id.; Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 600 (Tex. App.—Houston [1st Dist.] 1991, no writ); *O.K.C. Corp. v. Allen,* 574 S.W.2d 809, 812 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.); *Parrish v. Looney,* 194 S.W.2d 419, 424 (Tex.Civ.App.—Galveston 1946, no writ); 7 Tex.Jur.3d *Associations and Clubs* § 8 (1980). In the instant case, the sole trustee when FMBC acquired its significant assets was Roger Gorham. Although Roger Gorham ostensibly held legal title as trustee of FMBC, the assets are property of the Gorhams due to the fact that FMBC is the Gorhams' alter ego. *See Loving Saviour Church,* 556 F.Supp. 688, 693 (D.S.D.1983), *aff'd* 728 F.2d 1085 (8th Cir.1984).

### B. *Is Section 7611 Applicable?*

 FMBC argues that the levies are wrongful because the IRS did not comply with 26 U.S.C. § 7611. Section 7611 "provides that before the IRS begins an inquiry into the tax status of any organization claiming to be a church, the Service must satisfy certain prerequisites." *United States v. Church of Scientology Western United States,* 973 F.2d 715, 717 (9th Cir.1992), *cert. dism'd,* —— U.S. ——, 114 S.Ct. 297, 126 L.Ed.2d 245 (1993). The IRS must articulate a reasonable belief in the need for an investigation and provide special notice to the church. *See* 26 U.S.C. § 7611(a). If, however, the IRS is investigating an individual's tax liability and not that of a church, § 7611 is not applicable. *Kerr v. United States,* 801 F.2d 1162, 1164 (9th Cir.1986); *Zoe Chris-*

*tian Leadership, Inc. v. United States,* No. 88–05418 SVW, 1988 WL 159161, 89–1 USTC ¶ 9236 (C.D.Cal.1988); 26 U.S.C. § 7611(i)(2).

 Because the IRS was investigating the Gorhams' individual tax liabilities and not the tax exempt status of FMBC, § 7611 is not applicable. It was not necessary to investigate the tax exempt eligibility of FMBC in order to determine whether FMBC is the alter ego of the Gorhams. *See Hughes v. Commissioner,* 67 T.C.M. (CCH) 2561, 1994 WL 102071 (1994) (after determining that the church established by the taxpayer was the taxpayer's alter ego, the tax court held that it need not decide whether the church qualifies under 26 U.S.C. § 501(c)). FMBC may have continuously operated as a church with the ministration of sacerdotal functions and the conducting of religious worship since its formation. However, that fact alone does not prevent a finding that FMBC is the alter ego of the Gorhams. It was the Gorhams' unrestricted exercise of control over assets held in the name of FMBC that was the subject of the IRS's investigation, not the legitimacy of FMBC.[68] Therefore, FMBC's reliance on § 7611 as a defense is misplaced. The fact that a § 7611 investigation was not performed by the IRS of FMBC does not make the levies wrongful.

### C. *Gorhams' Credibility*

 In the proceeding before the Honorable William Wayne Justice, the Gorhams testified that they live in a travel trailer owned by FMBC because they are individuals of little means. The Gorhams asserted that their use of FMBC's assets was all related to their pursuing the missionary work of FMBC and that at no time was FMBC treated as their alter ego. However, after the conclusion of the trial before this Court, the Gorhams filed a complaint[69] asserting that FMBC *was* their alter ego and that the assets of FMBC should be declared their community property. Pursuant to Federal Rule of Bankruptcy Procedure 9011, the

---

**68.** The Court notes that should the IRS desire to investigate the tax status of FMBC pursuant to § 7611, there is case authority which holds that the automatic stay would not prevent such an

investigation. *See United States v. Universal Life Church,* 114 B.R. 246, 248–49 (E.D.Cal.1990).

**69.** Adversary Number 93–6057.

Gorhams' signature on the complaint constituted a certification that the assertions in the complaint were "well grounded in fact" and "not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation."

Although the Court never had the opportunity in the trial to observe the Gorhams during testimony, their pre- and post-trial conduct does affect their credibility with the Court. The Court is uncertain what advantage the Gorhams sought by asserting in the complaint that FMBC was their alter ego. Because the alter ego issue was thoroughly raised and was relevant to the proceeding before the Honorable William Wayne Justice, the Gorhams were very well aware of the consequence of a judicial finding that FMBC is their alter ego. The Court can only surmise that the Gorhams' assertions in the complaint regarding the issue of alter ego was an attempt of procedural gamesmanship on their part. Whatever the reason, the Gorhams' attempt to play fast and loose with this Court resulted in the Court viewing negatively their testimony. Therefore, the Court is unable to place much credibility in the Gorhams' testimony.

D. *Turnover*

■ Although the Court has found herein that FMBC is the alter ego of the Gorhams, the Court must now determine FMBC's interest in the funds that were seized by the IRS. *See Century Hotels v. United States,* 952 F.2d 107 (5th Cir.1992) (although debtor was the alter ego of taxpayer, the district court erred by not determining whether turnover was appropriate regarding funds seized prepetition by the IRS). Turnover is only appropriate if: (1) the property sought to be turned over is property of the estate; (2) FMBC has the right to use, sell, or lease the property in question; and (3) adequate protection is provided for the IRS's interest in the property. *See* 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 52.1; 11 U.S.C.

§ 542(a). FMBC asserts that the holding in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), mandates that the IRS turn over all funds that it has seized.

■ In *Whiting Pools,* the Supreme Court held that a debtor's estate can include property seized prepetition by the IRS. Thus, pursuant to § 542(a), the IRS must turn over property it seizes from a debtor prior to the filing of the petition if the property is in the possession or under the control of the IRS.[70] The Supreme Court based its holding on the fact that a tax levy does not transfer ownership of property to the IRS and that property of the estate can include assets the debtor does not own a possessory interest at the time the petition is filed.[71] *Whiting Pools,* 462 U.S. at 209–10, 103 S.Ct. at 2315–17. The IRS's interest in tangible property seized "is its lien on that property." *Whiting Pools,* 462 U.S. at 210, 103 S.Ct. at 2316. The IRS may only claim ownership to the proceeds received from the sale of the property to a bona fide purchaser at a tax sale and the IRS's ownership rights to the proceeds are limited to the value of the lien. *Id.*

1. *Prepetition Levy*

■ Regarding the approximately $60,-000.00 seized prepetition by the IRS from Arp State Bank and Ashland Oil, it is undisputed that the IRS obtained actual possession of the funds before the filing of the petition. Since the funds are an asset that need not be sold in order to be applied against the Gorhams' tax liabilities, the IRS acquired complete ownership of the funds seized upon possession. All the funds seized prepetition are excluded from the estate because the Gorhams' outstanding tax liabilities are greater than the amount seized. Accordingly, the approximately $60,000.00 never became property of the estate and is thus not subject to § 542(a). *See, e.g., In re Federation of Puerto Rican Organizations of*

---

70. The IRS in *Whiting Pools* seized the debtor's equipment, vehicles, inventory, and office supplies the day before the filing of the petition for reorganization.

71. A debtor's "estate is comprised of all the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

*Brownsville, Inc.,* 155 B.R. 44, 46–47 (E.D.N.Y.1993); *In re Fandre,* 167 B.R. 837, 839 (Bankr.E.D.Tex.1994); *In re Eisenbarger,* 160 B.R. 542, 546–48 (Bankr.E.D.Va. 1993); *In re Abercrombie,* 156 B.R. 782, 785 (Bankr.N.D.Tex.1993).[72] FMBC no longer has any cognizable interest in the funds. *Century Hotels,* 952 F.2d at 113 (debtor's interest in property that is minor is excluded from the estate).

### 2. *Postpetition Levy*

■ Regarding the $14,967.50 seized postpetition by the IRS from Ashland Oil, FMBC has a sufficient interest in the funds to bring the funds within the purview of § 541(a). As a debtor, FMBC is entitled to collect funds which are owed to it without unauthorized interference. Although FMBC is the alter ego of the Gorhams, that fact alone does not prevent funds derived postpetition from property held under the name of FMBC from being part of the estate. Upon the filing of the petition, all funds paid by Ashland Oil to FMBC became part of FMBC's estate and subject to the protection of the Bankruptcy Code. Further, the seized funds are assets that FMBC could use to satisfy its own creditors pursuant to 11 U.S.C. § 363.

■ Notwithstanding the fact that the first two requirements for turnover have been met, the Court is unable to order that the funds seized postpetition be turned over to FMBC. The Court is of the opinion that following the assumption of total control over FMBC, the Gorhams merely used FMBC as an entity to hold legal title to assets in an attempt to place the assets beyond the reach of the IRS while still personally enjoying the benefits of the assets. The placing of title to assets acquired after 1980 in the name of FMBC was a sham that neither this Court nor the Bankruptcy Code condones. Whatever legal interest FMBC may have to the assets is dwarfed by the interest of the Gorhams. Although the IRS seized funds ostensibly held under the name of FMBC, it is the Gorhams who have the greatest interest in the funds. The Court finds that under the facts of this case it would be an abuse of the Bankruptcy Code to permit the Gorhams (non-debtors) to use the automatic stay to stop the IRS's collection efforts when the entity holding legal title (FMBC) is the Gorhams' alter ego. Thus, the Court finds that there is more than sufficient cause to annul the automatic stay as it applies to the IRS. *See* 11 U.S.C. § 362(d)(1).[73] Public policy is best served by permitting the IRS to continue with its attempt to satisfy the Gorhams' tax liabilities with assets held under the name of the Gorhams' alter ego. Because this is essentially a two party dispute, the Court finds that there are no creditors who are either not related to the Gorhams or controlled by the Gorhams which will be harmed by the annulling of the stay. FMBC offered absolutely no form of adequate protection which could warrant the continuation of the stay.[74] Accordingly, the Court will order the return to the IRS the funds which were deposited into the registry of the Court.

### CONCLUSION

Throughout this proceeding, FMBC has argued that a church is much more than tangible objects such as a building. Thus,

---

72. Because the property in question is cash and not accounts receivable, the Court need not delve into the issue of whether accounts receivable levied prepetition by the IRS are property of the estate. *Compare In re Sigmund London, Inc.,* 139 B.R. 765 (Bankr.E.D.N.Y.1992) (accounts receivable levied prepetition are not property of the estate) *with In re Nat'l Ctr. for the Employment of the Disable,* 157 B.R. 291 (Bankr.W.D.Tex.1993) (accounts receivable levied prepetition by the IRS are property of the estate).

73. Section 362(d) provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant

relief from the stay provided under subsection (a) of this section, such as by … annulling … such stay—
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
 . . . .

74. FMBC's defense to the proceedings before the Court was based on the theories that the levies were wrongful because the IRS did not follow its procedures when it determined that FMBC is the Gorhams' alter ego and that there is no evidence to support such a finding. FMBC offered no adequate protection as an alternative in the event that it was unsuccessful with its theories.

FMBC asserts that the Court must look beyond the fact that "members" of FMBC ceased using the Building after 1980 and instead gathered in various locations, typically the home of Mike Gorham. Although the Court agrees with this assertion, the assertion does not address the principal issue before the Court—whether FMBC is the alter ego of the Gorhams. The Court acknowledges there is some evidence which indicates that Roger Gorham has continued with his ministry under the name of FMBC since 1980. The Court does not doubt the sincerity of the Gorhams' in their religious belief nor does the Court need to judge whether FMBC is in fact a church. However, the Court cannot disregard the overwhelming evidence of the Gorhams' use of assets held under the name of FMBC. It was the unrestricted control over and use of FMBC's assets by the Gorhams without credible explanation or accounting which compels the finding that FMBC is the Gorhams' alter ego.

Therefore, the Court finds that all funds levied pre- and postpetition by the IRS should not be turned over to FMBC for the reasons stated herein. To the contrary, the Court will release the funds placed into the registry of the Court to the IRS and will enter an order annulling the automatic stay as it applies to the IRS. The Court will enter a Final Judgment and Order Annulling Automatic Stay in accordance with this Memorandum Opinion.